# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                        NEWS RELEASE #023

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **5th day of May, 2015**, are as follows:

**BY WEIMER, J.**:

2014-CQ-1921     DANNY KELLY v. STATE FARM FIRE & CASUALTY COMPANY (United States Fifth Circuit Court of Appeals)

We answer the certified questions as set forth in this opinion. Pursuant to Louisiana Supreme Court Rule XII, the judgment rendered by this court on the questions certified shall be sent by the clerk of this court under its seal to the United States Court of Appeals for the Fifth Circuit and to the parties. CERTIFIED QUESTIONS ANSWERED.

05/05/15

# SUPREME COURT OF LOUISIANA

## NO. 2014-CQ-1921

## DANNY KELLY

## VERSUS

## STATE FARM FIRE & CASUALTY COMPANY

*ON CERTIFIED QUESTION FROM THE UNITED STATES*
*FIFTH CIRCUIT COURT OF APPEALS*

**WEIMER**, Justice

Invoking Louisiana Supreme Court Rule XII,[1] the United States Court of Appeals for the Fifth Circuit certified to this court two questions of law. Both questions relate to claims that an insurer is liable for subjecting its insured to a court judgment in excess of insurance policy limits. The certified questions are:

> (1) Can an insurer be found liable for a bad-faith failure-to-settle claim under Section 22:1973(A) when the insurer never received a firm settlement offer?

---

[1] Louisiana Supreme Court Rule XII provides, in relevant part:

> When it appears to ... any circuit court of appeal of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the supreme court of this state, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Louisiana for rendition of a judgment or opinion concerning such questions or propositions of Louisiana law. This court may, in its discretion, decline to answer the questions certified to it.

(2) Can an insurer be found liable under Section 22:1973(B)(1) for misrepresenting or failing to disclose facts that are not related to the insurance policy's coverage?

**Kelly v. State Farm Fire & Cas. Co.**, 582 Fed.Appx. 290, 296 (5th Cir. 2014).  The specific sections of La. R.S. 22:1973 referenced provide:

(A) An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing.  The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both.  Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

(B) Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

We accepted certification[2] and, for the reasons set forth below, answer the questions as follows: 1) A firm settlement offer is unnecessary for an insured to sustain a cause of action against an insurer for a bad-faith failure-to-settle claim, because the insurer's duties to the insured can be triggered by information other than the mere fact that a third party has made a settlement offer; 2) An insurer can be found liable under La. R.S. 22:1973(B)(1) for misrepresenting or failing to disclose facts that are not related to the insurance policy's coverage because the statute prohibits the misrepresentation of "pertinent facts," without restriction to facts "relating to any coverages."

## FACTS AND PROCEDURAL HISTORY

The certified questions stem from the claims handling by State Farm Fire & Casualty Company [State Farm] following an automobile accident.  The facts of this case have been presented by the court of appeals, which observed that, except where

---

[2] **Kelly v. State Farm Fire & Cas. Co.**, 14-1921 (La. 11/21/14), 152 So.3d 888.

2

specifically indicated, the parties did not dispute the court's narrative.[3] Accordingly, to place the certified questions into perspective, we draw largely from the court of appeals' factual and procedural narrative.

Danny Kelly ("Kelly") was injured on November 21, 2005, during an automobile accident with Henry Thomas ("Thomas"), who had liability insurance with State Farm. Thomas and Kelly were driving in opposite directions, when Thomas turned left and struck Kelly. Both Kelly and a witness told police that Thomas had failed to yield to oncoming traffic, but Thomas maintained he was not at fault. Kelly was taken to a hospital by ambulance and treated for a fractured femur. He remained hospitalized for approximately six days. The cost of his medical care totaled $26,803.17.

On January 6, 2006, Kelly's attorney mailed a letter to State Farm regarding Kelly's injury. The letter included copies of Kelly's hospital records and stated:

> Please find enclosed a copy of Danny Kelly's Medical Summary with attached medical records/reports and bills concerning his hospital treatment for the above referenced incident involving your insured. I will recommend release of State Farm Insurance Company and your insured, Henry Thomas, Jr., for payment of your policy limits.

> Please give me a call in the next ten (10) days to discuss this matter.

State Farm did not respond to the letter.[4] Kelly's attorney, however, conversed with State Farm representatives on March 8 and March 22, 2006. During the March 22 conversation, a State Farm representative offered to settle the case for $25,000, the

---

[3] **Kelly**, 582 Fed.Appx. at 292. In briefs to this court, the parties provided additional information beyond that recited by the appeals court and disagree as to the accuracy of that additional information. For example, Kelly maintains that State Farm accepted liability on December 21, 2005. However, State Farm contends it did not accept liability on that date because Thomas maintained the accident was not his fault. Such disputes run to the merits of the case, which are not before this court. Accordingly, we have largely gleaned the salient facts as being those presented to this court by the appeals court.

[4] *Id.*

policy limit,[5] and sent Kelly's attorney a letter memorializing the offer. Kelly's attorney responded that the offer was rejected and later filed suit against Thomas. The same day State Farm received word that the offer was rejected, it sent Thomas a letter informing him of the possibility of personal liability and suggesting that he retain independent counsel. The letter from State Farm did not mention the January 2006 letter from Kelly's attorney, State Farm's offer to Kelly, or the amount of Kelly's medical bills.

Kelly's lawsuit against Thomas proceeded to a trial, in which Thomas was found liable for the accident and cast in judgment for $176,464.07, plus interest. State Farm paid Kelly the policy limit of $25,000.

After the judgment was rendered against him, Thomas entered into a compromise agreement with Kelly. Thomas assigned his right to pursue a bad faith action against State Farm to Kelly in exchange for Kelly's promise not to enforce the judgment against Thomas' personal assets.

Kelly filed suit against State Farm, alleging State Farm was liable for bad faith practices under Louisiana law. State Farm removed the case to federal district court. The district court discerned two potentially actionable claims from the petition, which were described by the appeals court as: "(1) fail[ing] to notify Thomas of Kelly's January 2006 letter; and (2) fail[ing] to accept Kelly's January 2006 settlement offer."[6] State Farm filed a motion for summary judgment, seeking the dismissal of both claims.

On November 8, 2011, the district court partially granted State Farm's motion. The district court granted summary judgment in State Farm's favor on Kelly's first

---

[5] Apparently, there is some dispute regarding whether Kelly's attorney believed the policy limit was $50,000 or $25,000 when the letter was sent.

[6] **Kelly**, 582 Fed.Appx. at 293.

4

claim, holding that the January 2006 letter did not constitute a settlement offer and that State Farm did not have a duty to notify Thomas when the letter was received. The district court denied summary judgment on the second claim, however, stating that Kelly might be able to prove that State Farm's failure to settle his insurance claim constituted bad faith.

State Farm moved the district court for reconsideration on November 23, 2011, arguing that State Farm could be liable for bad faith failure to settle only if it failed to accept an actual offer and acted in bad faith. According to State Farm's argument, the district court's finding that the January 2006 letter did not constitute an offer necessarily precluded liability on Kelly's second claim. The district court agreed and revised its opinion to grant a full summary judgment in State Farm's favor. Kelly appealed the summary judgment dismissal of his two claims.

On appeal, a three-judge panel of the court of appeals affirmed in part and reversed in part.[7] The court affirmed dismissal of what the court would later identify as the second claim (*i.e.*, the duty to settle claim), reasoning that "[b]ecause Kelly's purported settlement letter and medical receipts did not constitute 'a satisfactory proof of loss from the insured,' Kelly cannot maintain a claim under § 22:1892(A)(1) as a matter of law."[8] However, the court reversed dismissal of the first claim (*i.e.*, the duty to inform claim), explaining:

> The only communication between State Farm and Thomas alleged here consisted of a single letter in which State Farm told Thomas that he might face personal liability and that he should consider seeking independent counsel. At no point did State Farm inform Thomas the extent to which Kelly's medical bills exceeded his policy limits, nor did State Farm tell Thomas that it had made a settlement offer that was rejected by Kelly. In short, State Farm sent a single, cursory

---

[7] **Kelly**, 559 Fed.Appx. 316.

[8] *Id.*, 559 Fed.Appx. at 320.

5

communication to Thomas, and it cannot be said as a matter of law that this letter communicated the pertinent facts necessary for Thomas to determine what was in his best interest. Therefore, State Farm was not entitled to judgment as a matter of law on Kelly's claim under § 22:1973(B)(1).[9]

Both parties filed petitions for rehearing, which were granted. The appeals court withdrew its earlier opinion and issued another opinion certifying the two earlier-quoted "questions of Louisiana law on which there are no controlling precedents from the Supreme Court of Louisiana."[10]

The appeals court divided its review of the pertinent jurisprudence into two categories, focusing only on "Thomas' claims [against State Farm] under Section 22:1973(A) and (B)(1)."[11] Accordingly, the first category of jurisprudence involved an interpretation of La. R.S. 22:1973(A), which in relevant part provides: "An insurer … owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both."

"Despite the broad wording of Section 22:1973(A), it does not give a third-party claimant the right to sue an insurer for a generalized breach of its duty of good faith and fair dealing."[12] **Theriot v. Midland Risk Ins. Co.**, 694 So.2d 184, 188-93 (La. 1997). If Kelly were advancing a claim only on his own behalf, his claim under La. R.S. 22:1973(A) would have been barred under this court's ruling in **Theriot** because the claims by third parties are only actionable if the third party proves the "insurer …

---

[9] **Id.**, 559 Fed.Appx. at 322.

[10] **Kelly**, 582 Fed.Appx. at 294.

[11] **Id.**

[12] **Id.**, 582 Fed.Appx. at 294.

has taken one or more of the prohibited actions specified in Section 22:1973(B)."[13] Because Kelly was not advancing his own claims, but Thomas' claims assigned to him, Kelly had an available cause of action under La. R.S. 22:1973(A). See **Stanley v. Trinchard**, 500 F.3d 411 (5th Cir. 2007). In the absence of a ruling to the contrary by this court, the appeals court determined it "must assume that an insured can pursue a cause of action against an insurer for a generalized breach of the duty of good faith and fair dealing" under La. R.S. 22:1973(A).[14]

The appeals court's assumption that a cause of action was available under La. R.S. 22:1973(A) to an insured such as Thomas did not settle the matter. In **Commercial Union Ins. Co. v. Mission Ins. Co.**, 835 F.2d 587, 588, & n.2 (5th Cir. 1988), the court placed a limitation on an insured's cause of action, holding "that an insurer could be found liable for a bad-faith failure-to-settle claim only if the insurer had received a firm settlement offer from a claimant."[15] The appeals court stated: "**Commercial Union**'s holding [was] seriously undermined by the subsequent enactment of Section 22:1973(A), which provides that '[t]he insurer has an *affirmative duty … to make a reasonable effort* to settle claims with the insured or the claimant, or both.' (emphasis added)."[16]

The appeals court further explained the need to certify the first question to this court:

---

[13] *Id.*, *citing* **Theriot**, 694 So.2d at 188-93.

[14] *Id.*, 582 Fed.Appx. at 294.

[15] *Id.*, 582 Fed.Appx. at 294, *citing* **Commercial Union**, 835 F.2d at 588 & n.2.

[16] **Kelly**, 582 Fed.Appx. at 294-95. La. R.S. 22:1973 was originally enumerated as La. R.S. 22:1220. See 1990 La. Acts 308, § 1 (adding La. R.S. 22:1220) and 2008 La. Acts 415 §, 1 (renumbering).

Section 22:1973(A)'s imposition of an affirmative duty to make a reasonable effort to settle claims suggests that insurers must do more than simply rest on their laurels and wait for claimants to submit firm settlement offers. Particularly given Louisiana's civilian methodology, which treats jurisprudence as secondary to statutes, this statutory enactment casts serious doubt on our prior jurisprudence on this issue.

Again, the Supreme Court of Louisiana and the Louisiana intermediate appellate courts have never held that a firm settlement offer is required for a bad-faith failure-to-settle claim. But Kelly has not directed us to any Louisiana cases that find an insurer liable for bad-faith failure-to-settle in the absence of a firm settlement offer. The resolution of this issue is thus unclear under both Louisiana law and our own precedent. Moreover, this issue is determinative. Kelly's petition for rehearing does not claim that he made a binding settlement offer, and therefore Kelly will lose if he must show that he made such an offer.[17]

Turning next to La. R.S. 22:1973(B), the appeals court observed "[s]ome Louisiana intermediate court decisions have held that an insurer can only be found liable under Section 22:1973(B)(1) if the insurer misrepresents the coverage provided by the insurance policy."[18] See **Talton v. USAA Cas. Ins. Co.**, 06-1513 (La.App. 4 Cir. 3/19/08), 981 So.2d 696, 709-10; **Strong v. Farm Bureau Ins. Co.**, 99-3362 (La.App. 2 Cir. 10/29/99), 743 So.2d 949, 953. *Cf.* **Arvie v. Safeway Ins. Co. of Louisiana**, 06-1266 (La.App. 3 Cir. 2/07/07), 951 So.2d 1284, 1285; **McGee v. Omni Ins. Co.**, 02-1012 (La.App. 3 Cir. 3/1503), 840 So.2d 1248, 1253-56 (in which the courts did not find that, under La. R.S. 22:1973(B), an actionable misrepresentation by an insurer must be limited to a misrepresentation regarding coverage).

Aside from finding the jurisprudence of the intermediate state courts conflicting on the issue of whether an actionable misrepresentation must relate to coverage, the appeals court found its own jurisprudence only clouded any resolution of the issue.

---

[17] *Id.* (citation and footnote omitted).

[18] *Id.*

8

The appeals court observed it had "never made a direct holding on this issue," but in **Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.**, 597 F.3d 729, 739-40 (5th Cir. 2010), the appeals court "suggested in dicta that Section 22:1973(B)(1) only applies to misrepresentations about coverage-related facts."[19] However, just before that dicta, the appeals court "cited **McGee**, [which] held that the insurer breached its duty under Section 22:1973(B)(1) by failing to communicate the status of a claim, [**McGee**,] 840 So.2d at 1256, which was clearly not a coverage-related misrepresentation."[20] The appeals court summed up its rationale for certifying the second question:

> Thus, if we apply **McGee**, Kelly should almost certainly win. As in **McGee**, Kelly's primary complaint under Section 22:1973(B)(1) is that State Farm failed to communicate the status of Kelly's claim and settlement negotiations to Thomas. **Versai** therefore cuts in two opposing directions in this case; **Versai**'s reliance on **McGee** indicates that Kelly should win, but **Versai**'s dicta suggests that Kelly should lose.[21]

Concluding its analysis, the appeals court explained that its own "precedent does not directly answer either of the [two certified] questions, and the State of Louisiana has a strong interest in ensuring the proper application of its insurer liability statute."[22] The appeals court further remarked that "[t]he Supreme Court of Louisiana is uniquely well-suited" to interpret La. R.S. 22:1973 and to answer the two questions arising from the present case.[23]

## LAW AND ANALYSIS

---

[19] *Id.*, 582 Fed.Appx. at 295.

[20] *Id.*, 582 Fed.Appx. at 296.

[21] *Id.*

[22] *Id.*

[23] *Id.*

9

Like the appeals court, we must emphasize that Kelly does not seek to recover directly for his own damages. Instead, Kelly has been assigned[24] Thomas' causes of action, as might have been available to Thomas, for State Farm's actions which allegedly subjected Thomas to the judgment in excess of Thomas' insurance policy limits. Therefore, the causes of action asserted by Kelly are not those of a third-party claimant, but rather those of an insured. We also agree with the appeals court that both certified questions call for interpretation of La. R.S. 22:1973. Mindful of our civilian mandate, we begin as we must with the words of the statute itself. See La. R.S. 24:177(B)(1) ("The text of a law is the best evidence of legislative intent."). See also **Quinn v. Louisiana Citizens Property Ins. Corp.**, 12-0152 (La. 11/2/12), 118 So.3d 1011, 1018; **Sensebe v. Canal Indem. Co.**, 10-0703 (La. 1/28/11), 58 So.3d 441, 446.

## FIRST CERTIFIED QUESTION

The first certified question calls for an interpretation of La. R.S. 22:1973(A), which, although cited previously, we again quote for convenience of the reader:

> An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

For similar ease of reference, the specific question the appeals court posed is: Can an insurer be found liable for a bad-faith failure-to-settle claim under subsection A of La. R.S. 22:1973 when the insurer never received a firm settlement offer?

---

[24] See La. C.C. art. 2642 ("All rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor.").

This question has two operative clauses and is indeed twofold. Before we can address the second clause, *i.e.*, whether a firm settlement offer is required, we must address the first clause–Can an insurer be found liable for a bad-faith failure-to-settle claim under subsection A of La. R.S. 22:1973? The appeals court assumed there to be a bad-faith failure-to-settle claim under subsection A of La. R.S. 22:1973 because its prior jurisprudence so held. See **Stanley**, 500 F.3d at 427. However, **Stanley** is not binding on this court and we perceive the ruling in **Stanley** to represent an "*Erie* guess"[25] as to how this court would rule if faced with the question of whether a bad-faith failure-to-settle claim exists under subsection A of La. R.S. 22:1973. Therefore, recalling that we are presently concerned only with the rights of an insured, we must determine whether La. R.S. 22:1973(A) affords an insured a cause of action for a bad-faith failure-to-settle claim.

Third parties have no cause of action under La. R.S. 22:1973(A). Subsection A of La. R.S. 22:1973 describes an insurer's general duties, but subsection B contains an exclusive list of actionable breaches of those duties for which third-party claimants can recover. See **Theriot**, 95-2895 at 14, 694 So.2d at 193. In the current case, State Farm argues that, like the rights of third-party claimants, the insured must show not simply a violation of the duties described in subsection A but also a breach described in subsection B in order to recover.

In **Theriot**, we expressly refused to hold that an insured was subject to the same exclusive list of insurer breaches contained in subsection B as a condition for recovery under subsection A of La. R.S. 22:1973. See **Theriot**, 95-2895 at 14, 694

---

[25] **Erie Railroad Co. v. Tompkins**, 304 U.S. 64 (1938), requires federal courts sitting in diversity jurisdiction to apply state substantive law to state law claims.

So.2d at 192 n.15. We also observed fundamental differences between the relationship of insurer to third party and the relationship of insurer to insured:

> It is generally agreed that an insurer's duties run primarily in favor of its insured as an outgrowth of duties that have their foundation in the contract between the parties. It is the relationship of the parties that gives rise to the implied covenant of good faith and fair dealing. The relationship between the insurer and third-party claimant is neither fiduciary nor contractual; it is fundamentally adversarial.

**Theriot**, 95-2895 at 15, 694 So.2d at 193. Owing to the adversarial relationship of a third-party claimant to an insurer, we concluded that "a cause of action directly in favor of a third-party claimant against a tortfeasor's insurer is not generally recognized absent statutory creation." *Id.* Presently, and unlike **Theriot**, we must approach La. R.S. 22:1973(A) from the proposition that the insurer undertakes in an insurance contract certain fiduciary duties toward the insured.

The plain language of La. R.S. 22:1973(A) is favorable to finding a cause of action for an insured. Most notably, after describing the duties owed by an insurer, La. R.S. 22:1973(A) concludes: "Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach." It is a cardinal rule of statutory interpretation that "[t]he word 'shall' is mandatory and the word 'may' is permissive." La. R.S. 1:3. This would indicate that an insurer is liable for a breach of the duties described in La. R.S. 22:1973(A), specifically: "An … insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both."

This leads us, of course, to the question of whether there is sufficient justification to find an insured has a cause of action under La. R.S. 22:1973(A), when we ruled in **Theriot** that a third-party claimant has no such cause of action–third

12

parties can only recover under La. R.S. 22:1973(B).  See **Theriot**, 95-2895 at 7, 15, 694 So.2d at 188, 193.  State Farm reminds us, the statute on its face requires an insurer "to make a reasonable effort to settle claims with the insured or the claimant, or both."  La. R.S. 22:1973(A).

Why only an insured may have a cause of action under La. R.S. 22:1973(A) was suggested in **Theriot**.  "The first sentence of Subsection A of the statute recognizes the jurisprudentially established duty of good faith and fair dealing owed to the insured, which is an outgrowth of the contractual and fiduciary relationship between the insured and insurer."  **Theriot**, 95-2895 at 5-6, 694 So.2d at 187.  Or, as our federal judicial colleagues later explained in **Stanley**, "[i]nasmuch as it is not the statute that *creates* the insured's cause of action against the insurer, the basis for an *insured's* cause of action for a breach of the implied covenant of good faith and fair dealing are not limited to the prohibited acts listed in La. R.S. 22:[1973](B)."  **Stanley**, 500 F.3d at 427 (emphasis in original).

Indeed, although we are not bound by **Stanley**, we approve of its ruling just quoted.  In response to both **Stanley** and **Theriot**, we now explain the basis for holding the legislature essentially codified within La. R.S. 22:1973(A) a jurisprudentially-recognized cause of action in favor of insureds for an insurer's bad faith failure to settle.  Our interpretation of La. R.S. 22:1973(A) is consistent with its enactment as a remedial measure.  See **Manuel v. Louisiana Sheriff's Risk Management Fund**, 95-0406 (La. 11/27/95), 664 So.2d 81, 85 (noting that La. R.S. 22:1220 [now enumerated La. R.S.22:1973] "is remedial in nature").

"[I]t is presumed the Legislature enacts each statute with deliberation and with full knowledge of all existing laws on the same subject."  **Fontenot v. Reddell**

**Vidrine Water Dist.**, 02-0439, 02-0442, 02-0478, p. 13 (La. 1/14/03), 836 So.2d 14, 24. It therefore stands to reason that the legislature did not intend its remedial measures to take away any rights, but to add rights. We made a similar observation in **Theriot**, in which we found that the legislature added rights of third-party claimants to recover under La. R.S. 22:1973(B), but we also noted: "Our holding does not affect rights and causes of action the insured may have directly against his own insurer for breach of the implied covenant of good faith and fair dealing arising out of the contractual and fiduciary relationship between the parties." **Theriot**, 95-2895 at 14, 694 So.2d at 192 n.15.

The availability of a cause of action for insureds to recover from a judgment in excess of policy limits has a long lineage, as we described in **Smith v. Audubon Ins. Co.**, 95-2057, p. 8 (La. 9/5/96), 679 So.2d 372, 376, dating back at least to this court's "recogni[tion] in **Roberie v. Southern Farm Bureau Cas. Ins. Co.**, 250 La. 105, 194 So.2d 713 (1967) [of] the responsibility of a liability insurer to deal in good faith with a claim against its insured." Moreover, in **Smith** we collected cases in which "the intermediate state courts and the federal courts have held liability insurers liable for an excess judgment when the insurer failed to deal in good faith with a claim against its insured."[26] **Smith**, 95-2057 at 8, 679 So.2d at 376.

---

[26] The cases we collected in **Smith** as examples of insurers being liable for excess judgment for failure to deal in good faith with an insured are:

> See, e.g., **Domangue v. Henry**, 394 So.2d 638 (La.App. 1st Cir.1980), cert. denied, 399 So.2d 602 (La. 1981) (after a tentative agreement to a settlement for the $10,000 liability policy limits, the compromise fell through when the insurer sought further negotiation of the victim's demand for $600 for automobile depreciation under the property damage coverage; the court held the insurer liable for the excess judgment of $23,000 over the policy limits, noting that the excess exposure, in a case with a "great preponderance of evidence" of the insured's fault, hinged on a dispute of less than $600); **Fertitta v. Allstate Ins. Co.**, 439 So.2d 531 (La.App. 1st Cir.1983), amended on other grounds and aff'd., 462 So.2d 159 (La. 1985) (in a case of clear liability with about $8,000 in special damages and $10,000 policy limits, the insurer was liable for an excess judgment

This long lineage of jurisprudence and the remedial intent of La. R.S. 22:1973(A) have important consequences for the availability of a cause of action for insureds under La. R.S. 22:1973(A). Because legislation is a primary source of law and *jurisprudence constante* is a secondary source of law, it follows that the legislature would not elevate the rights of claimants by establishing a cause of action enshrined by a statute, while leaving insureds with a cause of action tethered only to jurisprudence.[27] The relationship between an insurer and a third-party claimant, we have observed, is adversarial. See **Theriot**, 95-2895 at 15, 694 So.2d at 193. In contrast, the relationship between an insurer and the insured is fundamentally different because "a liability insurer is the representative of the interests of its insured and the insurer, when handling claims, must carefully consider not only its own self-interest, but also its insured's interest so as to protect the insured from exposure to excess

---

of almost $39,000 because of bad faith in failing to investigate the claim thoroughly, in failing to consider properly the extent of the insured's excess exposure, and in requiring that the settlement include a $2,668 medical payments subrogation claim by the tort victim's insurer); **Hodge v. American Fidelity Fire Ins. Co.**, 486 So.2d 233 (La.App. 3d Cir.), cert. denied, 489 So.2d 917 (La.1986) (the insurer was in bad faith and liable for an excess judgment of $40,000 for failing to tender its $10,000 policy limits when an adverse judgment was inevitable and the insurer grossly disregarded its insured's interests despite repeated warnings from its attorney); **Keith v. Comco Ins. Co.**, 574 So.2d 1270 (La.App. 2d Cir.), cert. denied, 577 So.2d 16 (La. 1991) (the court held the insurer in bad faith in a case of clear liability when the insurer arbitrarily refused to accept the treating physician's findings and rejected reasonable offers that would have totally protected the insured); **Roy v. Glaude**, 494 So.2d 1243 (La.App. 3d Cir.1986) (insurer was liable for excess judgment for arbitrarily refusing to settle within policy limits). See also **Parich v. State Farm Mut. Auto. Ins. Co.**, 919 F.2d 906 (5th Cir.1990), cert. denied, 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991) (the insurer was in bad faith by arbitrarily refusing to pay interest in addition to the policy limits when the judgment clearly would exceed the policy limits).

**Smith**, 95-2057 at 8-9, 679 So.2d at 376-77 (footnote omitted).

---

[27] See **Doerr v. Mobil Oil Corp.**, 00-0947, p. 14 (La. 12/19/00), 774 So.2d 119, 129, reh'g granted on other grounds, 00-0947 (La. 3/16/01), 782 So.2d 573 ("[I]t is only when courts consistently recognize a long-standing rule of law outside of legislative expression that the rule of law will become part of Louisiana's custom under Civil Code article 3 and be enforced as the law of the state."); compare La. C.C. art. 3 ("Custom may not abrogate legislation.").

liability." See **Smith**, 95-2057 at 7-8, 679 So.2d at 376, *citing* **Holtzclaw v. Falco, Inc.,** 355 So.2d 1279 (La. 1978) (on reh'g). Thus, to grant third-party claimants (who have an adversarial relationship to the insurer) a statutorily-recognized cause of action for an insurer's bad faith, while leaving insureds (whom the insurer is bound to protect) only a jurisprudentially recognized cause of action, would be an absurd and inequitable result. Our civilian mandate prohibits us from interpreting a statute in a manner that would lead to such absurd results. See La. R.S. 1:4 ("When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.").

Therefore, in light of the jurisprudence and the remedial intent of La. R.S. 22:1973(A), we return to the first clause of the certified question, which asks: Can an insurer be found liable for a bad-faith failure-to-settle claim under subsection A of La. R.S. 22:1973? Having determined that the plain language supports the existence of a cause of action in favor of the insured under La. R.S. 22:1973(A), we answer this question affirmatively. Based on our review of the jurisprudence and the remedial intent of La. R.S. 22:1973, to our federal colleagues' observation in **Stanley**, we add that La. R.S. 22:1973(A) represents a legislative recognition of a cause of action found earlier only in the jurisprudence.[28]

_____

[28] Indeed, based on the jurisprudence, commentators have formulated the following current guidance regarding an insurer's duty to settle:

> Anyone involved in handling claims quickly learns that the evaluation of liability and amount of damages is not an exact science, and reasonable professional judgment may vary (substantially in larger claims) on where to draw the line in settlement negotiations. It is suggested that the insurance company should disregard its policy limits in evaluating the reasonableness of a settlement offer. The insurer should not be motivated by how much it stands to gain or lose, thus disregarding the insured's exposure. Instead, the insurance company should analyze the claim from the viewpoint of how much it would be willing to pay in settlement of the case if its policy limits were adequate to cover the insured's full exposure. Then, it should be prepared to fund such reasonable settlement up to its policy limits. On the other hand, if the insurer reasonably would risk its own funds

Because we have affirmatively answered the first operative clause of the certified question, we must now turn to the second operative clause. The second clause essentially asks if the insurer must receive "a firm settlement offer" as a condition for an insured to recover for the insurer's bad-faith failure-to-settle.

As we did with the first operative clause, in answering the second clause, we begin with the language of the statute. The relevant language provides: "The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both." La. R.S. 22:1973(A).

Just as we observed when analyzing whether a cause of action exists in favor of an insured for an insurer's bad-faith failure-to-settle, the plain language sheds significant light on interpreting the provision of La. R.S. 22:1973(A) just quoted. The action required of an insurer by La. R.S. 22:1973(A) is contained within this clause: "The insurer has an affirmative duty ...." The phrase "affirmative duty" is a legal term of art, for which we are required to give the meaning commonly employed in the law. See La. R.S. 1:3 ("Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."). Affirmative duties abound in the law, but one example in the Insurance Code illustrates that an affirmative duty requires taking positive action(s) to comply with a legal standard. See, e.g. La. R.S. 22:1931.12 (indicating that persons found culpable for insurance fraud "have an

    in litigation of the claim, then it should not be required to pay more simply because the
    insured has purchased inadequate insurance protection. [Footnotes omitted.]

15 WILLIAM MCKENZIE & H. ALSTON JOHNSON, LOUISIANA CIVIL LAW TREATISE: INSURANCE LAW AND PRACTICE § 7.9, pp. 658-59 (4th ed. 2012) (citing, inter alia, **Pareti v. Sentry Indem. Co.**, 536 So.2d 417, 423 (La. 1988); **Holtzclaw**, 355 So.2d at 1283-1284; **Commercial Union**, *supra*.

affirmative duty to fully disclose all property and liabilities and all transfers of property which meet the criteria of Subsection C of this Section").

State Farm would have us hold that the affirmative duty required by La. R.S. 22:1973 is breached in bad faith only when an insurer unreasonably refuses an offer of settlement. In support, State Farm points to this statement in our opinion in **Smith**: "[A]n insurer is not obliged to compromise litigation just because the claimant offers to settle a claim for serious injuries within the policy limits, and its failure to do so is not by itself proof of bad faith." **Smith**, 95-2057 at 9, 679 So.2d at 377. State Farm argues the statement just quoted must be interpreted as a predicate for recovery because that statement precedes a listing of factors for determining whether an insurer has acted in bad faith in deciding to proceed to trial rather than settle. State Farm further argues that if we do not presently find a firm settlement offer to be a predicate to recovery, then we will effectively replace a bright line rule with uncertainty as to how an insurer can satisfy its duty.

State Farm's reliance on **Smith** has two shortcomings. The first is that we decided **Smith** under facts arising before the enactment of La. R.S. 22:1220 (now enumerated as La. R.S. 22:1973). See **Smith**, 95-2057 at 2, 679 So.2d at 373 (describing litigation arising from an accident occurring "[o]n May 12, 1987"); compare 1990 La. Acts 308, § 1 (noting the addition of La. R.S. 22:1220, effective July 6, 1990). Therefore, the issue is not whether this court believes public policy considerations–such as State Farm's claimed benefit of a bright line rule–should cause this court to impose a requirement that a claimant asserting insurer bad faith must have first submitted a firm settlement offer. Instead, the issue is whether the legislature imposed a requirement in La. R.S. 22:1973(A) that such a claimant submit a firm

18

settlement offer.  **Sensebe**, 10-0703 at 8, 58 So.3d at 446 ("The court's search for the public policy governing … insurance policies … must begin with the statutes enacted by the legislature.")

The second shortcoming in State Farm's reliance on **Smith** is that we listed factors to be considered without including in the list that a settlement offer must be received by the insurer.  Specifically, we held in **Smith** that the determination of whether the insurer acted in bad faith turns on the facts and circumstances of each case, and we articulated the following factors for making that determination:

> The determination of good or bad faith in an insurer's deciding to proceed to trial involves the weighing of such factors, among others, as the probability of the insured's liability, the extent of the damages incurred by the claimant, the amount of the policy limits, the adequacy of the insurer's investigation, and the openness of communications between the insurer and the insured.

**Smith**, 95-2057 at 9-10, 679 So.2d at 377.  Not only is a "firm settlement offer" not listed as a factor, but the case-by-case determination we described would necessarily and, hence, explicitly, have been conditioned by a "firm settlement offer" if that had been our intent.  Thus, **Smith** does not stand for the proposition that a "firm settlement offer" is required as a condition for an insured's bad-faith failure-to-settle claim against an insurer.[29]

Having determined our ruling in **Smith** did not impose a requirement for a firm settlement offer, we return to the text of La. R.S. 22:1973(A).  At the outset of our analysis of this "firm offer" issue, we noted that "affirmative duty," as used in La. R.S. 22:1973(A), means to take positive action(s) to comply with a legal standard.  See p. 18, *infra*.  Following the imposition on an insurer of an "affirmative duty," in La. R.S.

---

[29]  A finding that a firm settlement offer is not a requirement does not mean such an offer has no place in the analysis. Such an offer would unmistakably put the insurer on notice the matter can be resolved and, if the offer were within policy limits, shield the insured from an excess judgment.

22:1973(A), two positive steps to meet that duty are listed. Particularly, an insurer is required "to adjust claims fairly and promptly" and also "to make a reasonable effort to settle claims with the insured or the claimant, or both." La. R.S. 22:1973(A). The facts of the present case most directly implicate the latter step. Thus, in the context of the certified question, we can further narrow the issue as follows: whether an insurer's affirmative duty to make a reasonable effort to settle claims is triggered only by receipt of a firm settlement offer.

The clearest indicator is that a firm settlement offer is not listed anywhere in the statute. To impose the requirement of a firm settlement offer would essentially amount to adding words not included in the statute. As we understand State Farm's brief, not only would we have to essentially add wording requiring a "'firm' or 'actual' offer to settle," but State Farm would have us further qualify that an offer must be "within the available policy limits." The wording proposed by State Farm amounts not to statutory interpretation, but to a wholesale rewriting of La. R.S. 22:1973(A). Such rewriting is not, however, the role of this or other Louisiana courts. See **Cacamo v. Liberty Mut. Fire Ins. Co.**, 99-3479, 99-3480, p. 4 (La. 6/30/00), 764 So.2d 41, 44 ("Courts are not free to rewrite laws to effect a purpose that is not otherwise expressed.").

Practical considerations also support our interpretation of La. R.S. 22:1973(A) as not requiring a firm offer as a condition for finding the insurer has acted in bad faith. The insured has no control over whether a firm offer will be submitted. For that matter, neither does the insurer. Yet, the insurer has undertaken the obligation to protect the insured. "[I]n every case, the insurance company is held to a high fiduciary duty to discharge its policy obligations to its insured in good faith–including the duty to defend the insured against covered claims and to consider the interests of the

20

insured in every settlement." **Pareti**, 536 So.2d at 423, *citing*, *inter alia*, **Holtzclaw**, 355 So.2d at 1279. Therefore, we see no practical reason why the insurer's obligation to act in good faith should be made subject to the tenuous possibility that an insurer will receive a firm settlement offer. Instead, the insurer's obligation to act in good faith is triggered by knowledge of the particular situation, which knowledge "[t]he insurer has an affirmative duty" to gather during the claims process. See La. R.S. 22:1973(A). See also **Smith**, 95-2057 at 9-10, 679 So.2d at 377 (finding that an insurer has a duty to conduct "a thorough investigation" and to consider "the evidence developed in the investigation" when determining whether to litigate or settle).

As another practical consideration, we reject State Farm's concern that requiring a firm settlement offer would serve as a bright line rule, without which an insurer faces great uncertainty as to its duties. Although we disagree with State Farm's interpretation of **Smith** inasmuch as we do not find such a rule in **Smith**, we believe **Smith** is instructive. The five non-exclusive factors we articulated as part of a case-by-case determination should adequately address State Farm's desire for clearly defined ways to measure whether an insurer has made "a reasonable effort to settle claims" (La. R.S. 22:1973(A)) and to thereby protect the insured from excess liability.[30] See **Smith**, 95-2057 at 9, 679 So.2d at 377.

---

[30] The appeals court indicated this court need not "confine its reply to the precise form or scope of the legal questions … certif[ied]." **Kelly**, 582 Fed.Appx. at 297. Although we have already answered the first certified question as posed, for the following reasons, we believe that our answer would be incomplete without indicating the utility of the case-by-case evaluation of the five non-exclusive factors from **Smith**.

When the appeals court stated it was bound by its earlier decision in **Smith** (finding an insured can maintain a cause of action under La. R.S. 22:1973(A)), it indicated it was bound by the precedent of **Stanley**, 500 F.3d at 427. However, the appeals court explained this court "may correct this or any other assumption that it finds to be erroneous." **Kelly**, 582 Fed.Appx. at 297. We note that the utility of the case-by-case evaluation of the non-exclusive list of factors in **Smith** was not recognized by the appeals court in **Stanley**. Thus, we find the **Smith** test and factors to be a necessary corollary to the answer we have provided to the first certified question. To leave the parameters of the cause of action assumed, as the appeals court indicated it would remain absent our input, would not fulfill the appeals court's need for clarification of Louisiana law.

21

In sum, having now addressed both components of the first certified question, we answer it fully: an insurer can be found liable for a bad-faith failure-to-settle claim under La. R.S. 22:1973(A), notwithstanding that the insurer never received a firm settlement offer.

## SECOND CERTIFIED QUESTION

The second certified question asks us to decide whether an insurer can be found liable under La. 22:1973(B)(1) for misrepresenting or failing to disclose facts that are not related to the insurance policy's coverage. For ease of reference, the pertinent language of La. R.S. 22:1973(B) prohibits: "Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue." We do not, however, examine the language of La. R.S. 22:1973(B) in a vacuum. Rather, "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the language." La. R.S. 1:3. The context to subsection B of La. R.S. 22:1973 is subsection A. Because we have already determined that subsection A imposes affirmative duties on the insurer to take positive action, we have no difficulty in according the word "misrepresenting" in subsection B its commonly understood meaning at the time the statute was enacted. A communication from the insurer that either states an untruth or fails to state the truth is contemplated by La. R.S. 22:1973(B).[31] See BLACK'S LAW DICTIONARY (6th ed. 1990) ("**Misrepresentation**. Any manifestation by words or other conduct by one

---

[31] For purposes of the second certified question, it is important to recall that the merits of this case are not before this court to decide. We are, essentially, confined to the facts as the appeals court has presented them to us. For these reasons, we do not purport to decide whether State Farm's letter to Thomas addressed all facts that were "pertinent" within the meaning of La. R.S. 22:1973(B), let alone delineate every situation for which an insurer is required to disclose pertinent facts.

person to another that, under the circumstances, amounts to an assertion not in accordance with the facts.").

The appeals court declined to answer the second question, finding no ruling from this court and differing answers within the Louisiana appellate jurisprudence.[32] As the appeals court noted, two appellate courts found that an actionable misrepresentation is limited to a misrepresentation that "relate[s] to a coverage issue" and "[a] misrepresentation relating to a coverage issue would involve facts about the policy itself, such as the amount of coverage, lapse or expiration of the policy, or exclusions from coverage." **Talton**, 06-1513 at 20, 981 So.2d at 710, *quoting* **Strong**, 32,414 at 5, 743 So.2d at 953. Two other appellate courts found that an actionable misrepresentation was not factually limited to dealing with a coverage issue. First, in **McGee**, the appellate court ruled that, in the context of evaluating the possibility of settlement, "[m]isrepresentation can occur when an insurer either makes untrue statements to an insured concerning pertinent facts or fails to divulge pertinent facts to the insured." **McGee**, 02-1012 at 11, 840 So.2d at 1256. Then later, in **Arvie**, the appellate court cited the preceding ruling from **McGee** with approval. **Arvie**, 06-1266 at 2, 951 So.2d at 1286.

Although none of the four cases just cited explicitly addressed the issue, our review reveals a different approach to applying the word "or" in La. R.S. 22:1973(B)(1). In La. R.S. 22:1973(B), there are two phrases separated by "or." In **Talton** and **Strong**, the courts implicitly found that the word "or" connected the final qualifier, *i.e.*, the words "to any coverages at issue" with both the first phrase and the

---

[32] **Kelly**, 582 Fed.Appx. at 293 (noting that in the absence of a decision from the state's highest court, "we must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case.") *quoting* **Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.**, 565 F.3d 948, 954 (5th Cir. 2009).

second phrase. Stated differently, under **Talton** and **Strong**, the following underscored language is imported from the phrase following the word "or," such that the statute prohibits: "Misrepresenting pertinent facts [relating to any coverages at issue] or insurance policy provisions relating to any coverages at issue." La. R.S. 22:1973(B)(1).

The courts in **McGee** and **Arvie** took a different interpretative approach. Tacitly, **McGee** and **Arvie** confined the phrase "relating to any coverages at issue" to the phrase following the word "or." Thus, under **McGee** and **Arvie**, the first phrase would prohibit only "[m]isrepresenting pertinent facts."

State Farm argues we should disregard **McGee** and **Arvie**, in favor of **Talton** and **Strong**, because **Talton** and **Strong** took the most restrictive view of La. R.S. 22:1973. State Farm points out that in **Durio v. Horace Mann Ins. Co.**, 11-0084 (La. 10/25/11), 74 So.3d 1159, we observed that La. R.S. 22:1973 is penal and, therefore, should be strictly construed. However, in **Durio** we noted that "being mindful that statutes subjecting insurers to penalties are considered penal in nature and should be strictly construed" is a principle that goes hand-in-hand with "following proper guidelines of statutory interpretation." *Id.*, 11-0084 at 19, 74 So.3d at 1170. Of course, "proper guidelines of statutory interpretation" include the legislature's own guidelines, which frame our analysis below.

Because the interpretation of La. R.S. 22:1973(B)(1) hinges on the word "or," we take direct legislative guidance from La. R.S. 1:9: "Unless it is otherwise clearly indicated by the context, whenever the term 'or' is used in the Revised Statutes, it is used in the disjunctive and does not mean 'and/or'." While it is possible to interpret "or" to mean "and/or," La. R.S. 1:9 instructs that we may only reach that conclusion

24

if "clearly indicated by the context." Accord LOUISIANA SENATE DRAFTING MANUAL, Vol. 1, p. 102 (2007) ("Remember 'or' is generally disjunctive.").

The context does not clearly indicate that "or" should be interpreted to mean anything other than "or." Even though the introductory word "[m]isrepresenting" applies to the phrase before and after the word "or," La. R.S. 22:1973(B)(1) can be given a reasonable meaning without importing words from the end of La. R.S. 22:1973(B)(1) to precede the word "or."[33] Indeed, if we did not give "or" a disjunctive meaning, we would render the first phrase ("pertinent facts") both redundant and meaningless because misrepresentations about insurance policy provisions are addressed in the second phrase, which follows the word "or." Given that here "the wording … is clear and free of ambiguity," we are required to "observe the letter" of the entire law. La. R.S. 1:4. We must, therefore, apply the word "or" disjunctively, meaning that an insurer can be liable for misrepresenting either: 1) "pertinent facts," or 2) "insurance policy provisions relating to any coverages at issue." La. R.S. 22:1973(B)(1).

To the extent the intermediate appellate courts held a misrepresentation of "pertinent facts" must also "relat[e] to any coverages at issue" in order to be

---

[33] We have recently interpreted a similarly structured statute in a similar manner. Specifically, in **Smith v. State**, 10-1140, p. 6 (La. 1/24/12), 84 So.3d 487, 492, a man convicted of sex offenses occurring in 1995 urged us to apply a restrictive date for sex offender registration that followed the word "or," such that the restrictive date of 1997 would also apply to the phrase before the word "or." The statute (La. R.S. 15:542.1(A) (prior to amendment in 1999) provided:

> Any person convicted of a sex offense as defined in R.S. 15:542(E) or of a criminal offense against a victim who is a minor as defined in R.S. 15:541(14) after July 1, 1997 shall have the duty to register and report under the provision of this Chapter.

This court explained that the first part of the sentence dealing with a "sex offense" was "separated by the disjunctive 'or,'" such that the date restriction "after July 1, 1997," applied only to the second part of the sentence following the word "or." *Id.* Thus, this court held the first part of the sentence preceeding the word "or" was not restricted by the phrase "after July 1, 1997," and the offender was required to register for his 1995 sex offenses. *Id.*

actionable, their holding contravenes the use of the word "or" required by La. R.S. 1:9. Accordingly, the opinions in **Talton** and **Strong** are hereby overruled.

In sum, we provide the following answer to the second certified question. An insurer can be found liable under La. R.S. 22:1973(B)(1) for misrepresenting or failing to disclose facts that are not related to the insurance policy's coverage; the statute prohibits the misrepresentation of "pertinent facts," without restriction to facts "relating to any coverages."[34]

## CONCLUSION

We answer the certified questions as set forth in this opinion. Pursuant to Louisiana Supreme Court Rule XII, the judgment rendered by this court on the questions certified shall be sent by the clerk of this court under its seal to the United States Court of Appeals for the Fifth Circuit and to the parties.

**CERTIFIED QUESTIONS ANSWERED.**

---

[34] Although we have rejected State Farm's proposed interpretations of La. R.S. 22:1973(B)(1), we have not entirely rejected State Farm's larger view of the statute. Inasmuch as La. R.S. 22:1973 was born from a jurisprudential pedigree, it appears that even under pre-enactment law, courts recognized that tight reigns must be kept on a cause of action for insurer settlement practices. For example, when responding to the suggestion that holding an insurer liable for an excess judgment was tantamount to "Monday-morning quarterbacking" and that "with the benefit of hindsight almost any settlement decision can be looked on as poor judgment," an appellate court applying pre-enactment law explained: "We are not saying that mere poor judgment is the basis of an award for bad faith failure to settle within policy limits. … the law of bad faith should be cautiously applied …." **Keith v. Comco Ins. Co.**, 574 So.2d 1270, 1279-80 (La.App. 2 Cir. 1991), *citing* **Moskau v. Insurance Co. of North America**, 366 So.2d 1004 (La.App. 1 Cir. 1978). Having traced the development of a cause of action for bad faith settlement practices from the time it was a jurisprudentially-recognized cause of action to its present status as a statutorily-enshrined facet of the law, we believe it is appropriate to reiterate that La. R.S. 22:1973 should be strictly construed. See **Durio**, 11-0084 at 19, 74 So.3d at 1170. A strict application of the statute does not contemplate gamesmanship, such as having "unrealistic offers ... presented through 'carefully ambiguous demands coupled with sudden-death timetables'" in order to "set up" the insurer for an excess liability judgment. See **Parich v. State Farm Mut. Auto. Ins. Co.**, 919 F.2d 906, 912 (5th Cir. 1990), *citing* **Baton v. Transamerica Ins. Co.**, 584 F.2d 907, 914 (9th Cir. 1978).

26