570 So.2d 6 (1990)
John E. PARKER, Jr., Plaintiff-Appellee,
v.
BOISE SOUTHERN CO., et al., Defendants-Appellees.
No. 89-435.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
Rehearings Denied November 5, 1990.
Writ Denied February 22, 1991.
*7 Hall, Lestage, H.O. Lestage III, DeRidder, plaintiff-appellee.
Jones, Jones & Alexander, J.B. Jones, Jr., Cameron, Raggio, Cappel, (Richard Chozen), Lake Charles, Jeansonne & Briney, James T. McManus, Lafayette, Henderson, Hanemann, Joseph A. Reilly, Jr., Houma, La., Long, Aldridge, Albert Norton, Philip Badley, Atlanta, Ga., defendants-appellees.
Before GUIDRY, STOKER and LABORDE, JJ.
GUIDRY, Judge.
Plaintiff, John Parker, brought suit against Boise Southern Company and Boise Cascade Corporation (collectively Boise) for damages for personal injuries sustained when he fell during the course and scope of his employment with Williams Contracting Maintenance Services, Inc. (Williams) at Boise's paper mill in DeRidder, Louisiana. Williams' worker's compensation insurer, Home Indemnity Company, intervened in the suit to recover benefits paid to plaintiff. Boise cross-claimed against Williams alleging that in the event of its liability, Boise was entitled to indemnity from Williams pursuant to an agreement between the companies. After a jury trial, the trial court granted Boise's and Williams' motions for judgment notwithstanding the verdict dismissing plaintiff's suit against Boise. Plaintiff appeals.

FACTS
Boise Cascade Corporation and Southern Natural Resources, Inc. formed an unincorporated partnership called Boise Southern to construct and operate a pulp and paper mill in Louisiana. In 1983, serious problems were discovered with the roof and structural steel supports for one of the buildings. Boise ultimately contracted with Williams to do the repairs. Since Boise did not want its paper production to be interrupted during the repair work, Williams erected an elaborate paneling and enclosure system approximately 80 feet above the floor of the Boise building to function as an enclosed work platform for its employees. Williams holds a patent on this enclosed platform work area design and had used same on several previous jobs. The floor of the enclosure is made up of interlocking aluminum panels suspended by chains attached to the steel support structure of the roof. Polyethyline vinyl (visqueen) and tarpaulins are placed over *8 the aluminum floor panels. Side walls are constructed by nailing 2x4s into the permanent steel columns supporting the roof of the Boise building and attaching plywood and visqueen to it. The system creates an airtight room for Williams' employees to paint, sandblast and repair the exterior roof and interior steel support beams without debris or the outside weather reaching the paper machines or Boise employees below.
A catwalk extended across the width of the Boise building approximately 25 to 30 feet below the roof (14 feet below the Williams' enclosure system once installed). The catwalk connects two enclosed areas situated on opposite sides of the Boise building known as mezzanine enclosure areas. (See Appendix 1). Williams similarly enclosed the catwalk with 2x4s, plywood and visqueen.
Prior to the accident, some Williams' employees took a section of the upper enclosed area down to create an opening between the upper enclosure and the mezzanine area to facilitate the transfer of materials and personnel between the two areas. In doing so, the former visqueen wall was draped over a 12 inch diameter pipe located approximately 12 inches beneath and away from the aluminum floor panels of the upper area. This resulted in a hidden unsupported space between the edge of the floor panel and the pipe.
Plaintiff was a roofing supervisor for Williams at the Boise Mill. Although largely concerned with the exterior roof, it was not uncommon for his crew to be called inside, especially in inclement weather, to do clean up work in the enclosed areas. On January 14, 1985, plaintiff fell from the upper enclosed area onto the mezzanine floor as he was attempting to lower shovels and brooms through the previously described opening. Plaintiff testified that he fell when he stepped onto the unsupported area between the enclosures and the 12" pipe. Plaintiff was seriously injured in the fall.
Plaintiff sued Boise asserting its liability under theories of both negligence and strict liability. Home Indemnity intervened to recover worker's compensation benefits paid to plaintiff. Boise third partied Williams and Home Indemnity for full indemnification pursuant to the Boise Southern-Williams contract. Boise's third party demand against Home Indemnity was dismissed by summary judgment.
Following trial, the jury, in response to special interrogatories, found liability under theories of negligence and strict liability and awarded damages of $1,058,000.00. Fault was assessed 10% to plaintiff and 45% each to Williams and Boise. The trial court found in favor of Home Indemnity on its intervention and in favor of Boise on its right to indemnification from Williams. Subsequently, Williams and Boise both filed motions for JNOV urging error in the jury's finding of liability on the part of Boise and, alternatively for a new trial. The trial court granted these motions rendering judgment in favor of Boise and against plaintiff and intervenor on the main demand and in favor of Williams and against Boise on the third party demand. The court also conditionally granted a new trial. Plaintiff appeals the JNOV and Boise protectively appealed the dismissal of its third party demand.

JNOV
In granting the motion for JNOV, the trial judge stated that he was applying the standard as set forth in Silliker v. St. Landry Parish Police Jury, 520 So.2d 880 (La.App. 3rd Cir.1987); Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979), on appeal after remand, 412 So.2d 191 (La. App. 3rd Cir.1982), writ denied, 415 So.2d 954 (La.1982); and, Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969). Silliker and Campbell quote the following standard for JNOV from Boeing:
"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence not just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in *9 favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."
In addition, Silliker and Campbell state that in applying this standard, the court is not to weigh credibility of the witnesses, or to substitute its judgment on the facts for that of the jury. Silliker, supra, at 884; Campbell, supra, at 240.
The trial court applied the proper standard in considering the motions for JNOV. We now review the evidence in a light most favorable to plaintiff to determine whether the trial court committed error in granting the JNOV.

BOISE'S LIABILITY UNDER ARTICLE 2317
Louisiana Civil Code Article 2317 reads in pertinent part as follows:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of things which we have in our custody..."
Plaintiff does not suggest that Boise is responsible for any negligence of Williams or its employees other than as discussed under the heading "Boise's Liability Under Article 2315". Therefore, in order for plaintiff to prevail under this article, he was required to establish by a preponderance of the evidence that: (1) the thing which caused him damage was in the custody of the defendant; (2) it contained a defect which posed an unreasonable risk of injury; and, (3) his injury was caused by that defect. Willis v. Cajun Electric Power Co-Op, Inc., 484 So.2d 726 (La.App. 1st Cir.1986), writ denied, 488 So.2d 200 (La. 1986). Article 2317 is translated directly from the French Civil Code and the word "garde", which the Louisiana redactors translated as "custody", means the legal responsibility for the care or keeping of the thing. Willis, supra, citing Loescher v. Parr, 324 So.2d 441 (La.1975).
In the case sub judice, the record reflects that the enclosure system was owned by Williams and taken away by them upon completion of the job. There is no evidence that Boise instructed Williams on how to build, maintain or remove the system. Neither party ever intended for the system to become a permanent part of the Boise building and it was in fact removed when the repair work was completed. In addition, the repair work was done in sections and Williams moved their system along the roof as their work progressed. There is no evidence that Boise regulated, directed or helped in any movement of the system. Boise had the right to enter the enclosure system for inspection purposes to verify that Williams was working in compliance with contract requirements and without unnecessary risks to Boise's employees. However, Louisiana jurisprudence does not equate this right to inspect for contract compliance with "custody" as that term is contemplated in Article 2317. White v. Gulf States Utilities Co., 525 So.2d 145 (La.App. 3rd Cir.1988), and Willis, supra.
Plaintiff and Home Indemnity rely on the federal cases of Dobbs v. Gulf Oil Co., 759 F.2d 1213 (5th Cir.1985) and Haas v. Atlantic Richfield, 799 F.2d 1011 (5th Cir.1986), in arguing that the right to control safety when the work is done on one's building is sufficient to constitute Article 2317 "custody" or garde. We find these cases factually inapposite. In the cited cases, the owners of the drilling rigs, Gulf Oil in Dobbs and ARCO in Haas, had responsibility for overseeing the safety of operations on the rigs. In the case before us, according to the contract documents and the evidence presented at trial, Williams was responsible for the safety of its own employees. Article XII Section 12.2 of the General Conditions for the Fixed Sum Agreement between Boise Southern and Williams states:
"The Contractor's superintendent shall inspect the area where Work is being *10 performed at least once a week to ensure that the safety conditions and requirements set forth herein are followed. Boise Southern shall have the right to make such unscheduled inspections as it may deem necessary to ensure that the Work is being performed in compliance with this paragraph and without unnecessary or unreasonable risks to Boise Southern's employees. Such inspections shall not be construed as assuring the safety of Contractor's own employees."
Thus, while Boise had the right to inspect for safety compliance, it did not have the obligation to do so. It was Williams who had the responsibility for implementing safety procedures for its employees. The testimony of the witnesses supports this conclusion.
After reviewing the evidence, we do not find that the trial court erred when it concluded that reasonable minds could not differ that Boise never had custody of the panel and enclosure system. Since Boise did not have custody or garde of the system, the remaining elements for a finding of liability under Article 2317 need not be addressed.

BOISE'S LIABILITY UNDER ARTICLE 2322
Louisiana Civil Code Article 2322 reads as follows:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
In order for plaintiff to recover under this article, the record must establish that: (1) there is a building; (2) defendant is the owner of the building; and, (3) there is a "ruin" in the building caused by a vice in construction or a neglect to repair which caused him damage. White, supra. "Building" as used in this article includes necessary appurtenances attached to structures and movables made immovable by attachment. La.C.C. arts. 465 and 466; Sumner v. Foremost Ins. Co., 417 So.2d 1327, 1332 (La.App. 3rd Cir.1982), and cases cited therein.
The Boise structure is clearly a building and Boise owns it. However, plaintiff's injury was not caused by a "ruin" in the Boise building but rather by a defect in the panel and enclosure system which is owned by Williams. There can be liability on the part of Boise only if the system was a necessary appurtenance or component part of the Boise building.
The record shows that the enclosure system was not necessary for the functioning of the Boise building and was clearly never intended to become a permanent and integral part of it.[1] The aluminum panels were chain suspended from the roof support beams of the building. A nail gun was used to secure 2×4s to the beams. Plywood and visqueen were then nailed to the 2×4s. As the repair work was completed, the system was moved along the roof with minimal nail damage to the roof support structure that required minor touch-up work. When the repairs were finished, the system was completely removed and the aluminum panels were transported to Williams' next job. Although there was substantial damage to the wood and visqueen, these were consumable items. There is no evidence that these movables were intended to be transported from one job to the next nor were they to remain secured to the Boise building.
For the foregoing reasons, we find that the trial court did not err when it concluded that, viewing the evidence in a light most favorable to the plaintiff, reasonable minds could not differ that the transitorily attached panel and enclosure system was not a necessary appurtenance to or component part of the Boise building. Therefore, *11 Boise is without any liability to plaintiff under Article 2322.

BOISE'S LIABILITY UNDER ARTICLE 2315
A principal is not liable to third parties for the negligent acts of its independent contractor unless (1) the work performed by the contractor is ultrahazardous; or, (2) the principal has expressly or impliedly authorized the performance of the work in a particular manner which rendered the work unsafe. Ewell v. Petro Processors of Louisiana, Inc., 364 So.2d 604 (La.App. 1st Cir.1978), writ denied, 366 So.2d 575 (La.1979); Guillory v. Conoco, Inc., 521 So.2d 1220 (La.App. 3rd Cir.1988), writ denied, 526 So.2d 801 (La.1988); Grammer v. Patterson Services, Inc., 860 F.2d 639 (5th Cir.1988).[2]
Plaintiff concedes that the ultrahazardous exception has no application in this case. Therefore, Boise will only be liable to plaintiff under Article 2315 if Williams was not an independent contractor, or if an independent contractor, Boise impliedly or expressly authorized the performance of the work in a manner which rendered it unsafe.
In Hickman v. Southern Pacific Transport Co., 262 So.2d 385 (La.1972), the Louisiana Supreme Court set forth the criteria for finding a principal-independent contractor relationship:
"1. There is a valid contract between the parties;
2. The work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it;
3. The contract calls for specific piecework as a unit to be done according to the independent contractor's own methods without being subject to the control and direction of the principal, except as to the result of the services to be rendered;
4. There is a specific price for the overall undertaking; and
5. Specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach."
See also Guillory, supra, and Smith v. Crown Zellerbach, 486 So.2d 798 (La.App. 1st Cir.1986), writ denied, 489 So.2d 246 (La.1986).
Plaintiff virtually concedes that the criteria set forth above under 1, 2, 4 and 5 were established but argues that the third condition was not satisfied in that Boise retained control and direction over Williams' work including the safety procedures employed. We observe that in evaluating this condition, it is not the supervision and control actually exercised by the principal that is significant, rather, it is the principal's right to exercise control that is of primary concern. Hickman, supra; Guillory, supra; Smith, supra.
Article III of the General Conditions for the Fixed Sum Agreement between Williams and Boise specifically states:
"The Contractor's relationship with Boise Southern shall in all respects be that of independent contractor. Boise Southern shall have no power to determine or control Contractor's manner of performing the Work except insofar as may be necessary to allow Boise Southern to properly inspect the Work and ensure itself that the Contractor is complying with the Contract Documents."
In addition, Article II of the Fixed Sum Construction Agreement provides that the contractor shall supply "all labor, supervision, tools, equipment, materials, fuel, power and expertise ...". Further, consistent with these contract provisions, the evidence shows that although Boise monitored the work progress and inspected for quality, it *12 did not exercise supervision and control over the work performed by Williams. Boise required that Williams comply with Boise's safety program while on the jobsite, but it was Williams who was responsible for the safety of its own employees. Boise assumed responsibility for the safety of its own employees but required that the Williams' employees follow the safety regulations of the contract so as to ensure the safety of the Boise employees. The agreement between the parties was that Boise would take direct action to correct an unsafe Williams' practice only if there was apparent and imminent danger, Boise assuming no obligation to inspect and discover unsafe practices. See Verrett v. Louisiana World Exposition, Inc., 503 So.2d 203 (La.App. 4th Cir.1987), writ denied, 506 So.2d 1229 (La.1987). Since there was a valid contract between the parties for work of an independent nature to be accomplished within a specific time period for a specific price and Boise did not retain control or direction over the work performed by Williams, Williams is an independent contractor.
There is no evidence in the record which would support a finding that Boise expressly or impliedly authorized the opening between the upper enclosure and the mezzanine area or the manner or method employed by Williams' employees for transferring materials and personnel between the areas. This opening was made by Williams' employees under the direction of Williams' supervisors. The record does not establish that Boise was aware that an opening had been made between the upper enclosure and the mezzanine area.
The above being considered, we find no error in the trial court's determination that reasonable minds could not differ that Williams was truly an independent contractor and that Boise did not expressly or impliedly authorize the unsafe practice that resulted in plaintiff's injury. Since we find that the trial court properly granted JNOV in favor of Boise, the other issues raised on appeal are moot.
For the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff and Home Indemnity Company.
AFFIRMED.
LABORDE, J., dissents.

NOTES
[1] The Boise building contained a false ceiling over the hot "wet" end of Machine No. 1 to prevent condensation forming on the steel roof supports and falling on newly formed paper. When Williams repaired the roof and supports in that area, the false ceiling had to be removed for the enclosure system to fit. For the time that the repairs were taking place in the area, the system served the same purpose as the false ceiling. However, this was put in for Williams' purposes, not Boise's, and the false ceiling was put back immediately after Williams completed their work.
[2] Grammer, supra, at 641, defines the second exception as a principal liable for the acts of an independent contractor "over which it has exercised operational control or which it has expressly or impliedly authorized". As observed in Massey v. Century Ready Mix Corporation, 552 So.2d 565, 576 (La.App. 2d Cir.1989), writ denied, 556 So.2d 41 (La.1990), "[i]f the principal retains operational control, then the contractor is not an independent one".