I KOSTELKA, J.
After a trial by jury, Lonnie Ray Little-ton appeals the judgment of the Third Judicial District Court for Union Parish in favor of John Deere Insurance Company. For the following reasons, we affirm.
Facts
Lonnie Ray Littleton (“Lonnie”) and his father, Roy E. Littleton (“Roy”)(collectively, the “Littletons”), were engaged in the logging business. Roy ran the business by which Lonnie was employed. The Little-tons reached an agreement whereby Lonnie would lease in his name a skidder, a type of equipment used in the logging industry, and work for Roy and/or his business as an independent contractor rather than as an employee.
In 1995, the Littletons located a 1993 Timberjack 450C skidder which cost $70,000.00 plus sales tax in the amount of $4,550.00. The skidder’s “hour meter” showed that it had been in operation for approximately 4,000 hours (the evidence showed a skidder engine life span of 8,000-9,000 hours is considered good). Lonnie entered into a thirty-six-month lease/purchase agreement with Colonial Pacific Leasing Corporation (“Colonial Pacific”). The lease/purchase agreement required that Lonnie obtain an insurance policy which he acquired from John Deere Insurance Company (“John Deere”) naming Colonial Pacific as loss payee.
The Littletons began operating the skid-der in August of 1995. On January 9, 1996, the skidder caught fire. Fire extinguishers were used in an attempt to put out the fire, but the skidder had to be driven into a shallow pond in order to totally extinguish the fire. As a result, the skidder sustained substantial damage and was rendered inoperable. The Littletons reported the incident to their insurance agent, who reported the claim to l-John Deere, which in turn assigned an independent adjusting firm, L.A. Breard & Associates, Inc., to handle the claim. The adjuster, Tim O’Neal (“O’Neal”), came to the site and suggested that the skidder be moved to a repair shop so that a damage appraisal could be made. The Littletons had the skidder transported to a repair shop of their choice, which was recommended to them by another logger. In order to evaluate the amount of damage done to the skidder, it was disassembled, a list of parts and their costs was prepared, and a total appraisal for parts and labor was calculated. According to O’Neal’s notes, at the time of the fire, the skidder’s hour meter showed 4,105 hours of use.
Based on the appraisal of the damage, John Deere issued a check in the amount of $15,109.28 to Lonnie (the “insurance proceeds”). The insurance proceeds were calculated as follows: O’Neal determined the total loss as $19,615.53, with $14,025.00 of that sum for new parts. O’Neal subtracted a depreciation of 25 percent, or $3,506.25, from the amount for the parts. After subtracting the depreciation value and the $1,000.00 deductible provided in the insurance policy, the amount of the insurance proceeds was determined to be the $15,109.28 paid.
The insurance proceeds check included Colonial Pacific as loss payee as required by the lease/purchase agreement. Colonial Pacific refused to endorse or return the check to Lonnie until all repairs to the skidder had been completed. However, the repair shop refused to fix the skidder without Lonnie guaranteeing payment, *286 which he could not do. Thus, the skidder remained at the repair shop in its disassembled state. In December, 1996, the "repair shop filed suit against the Littletons and Colonial Pacific ^seeking storage costs, and, as a result of the repair shop’s lawsuit, the skidder was sold at a judicial sale in March, 1997 to a third party.
The Littletons ultimately filed suit against Colonial Pacific and John Deere, alleging lost profits to their logging operation as a result of losing the 1993 Timber-jack skidder. Specifically, the Littletons claimed that John Deere violated La. R.S. 22:1220 and La. R.S. 22:658 for failure to timely pay their insurance claim.[1] John Deere was absolved of any liability, and it is from that judgment that Lonnie now appeals.
Discussion
After trial, the jury concluded that John Deere did not owe any additional funds to Lonnie under the policy. Consequently, the jury agreed that John Deere, as a matter of law, had acted pursuant to the terms of its insurance policy and that the 25 percent reduction taken for depreciation was reasonable and supported by the evidence.
On appeal, Lonnie raises various related assignments of error regarding this determination. He argues that the John Deere policy contained no provision for betterment.[2] Further, he urges that the policy was ambiguous, and, therefore, should be construed against John Deere. 14John Deere maintains that the depreciation reduction taken by it was allowable under the policy. The applicable policy provisions read as follows:
2. PERILS INSURED "This policy insures against all risks of direct physical loss of or damage to the property covered, except as provided elsewhere in this policy.
[[Image here]]
8. [John Deere] shall not be liable beyond the lesser of the amount insured or the actual cash value of the insured property, but in no event for more than the amount necessary to repair or replace the insured property with like kind and quality.
[[Image here]]
CONDITIONS
[[Image here]]
4. Valuation. [John Deere] shall not be liable beyond the lesser of the amount insured or the actual cash value at the time any loss or damage occurs, and the loss or damage shall be ascertained or *287 estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.
(Emphasis added)
Considering the law regarding the interpretation of contracts, specifically insurance contracts, the provisions relied upon by John Deere do not appear ambiguous.
Whether an insurance contract is ambiguous is a matter of law. Yarbrough v. Federal Land Bank of Jackson, 31,815 (La.App.2d Cir.03/31/99), 731 So.2d 482; Gleason v. State Farm Mut. Auto. Ins. Co., 27,297 (La.App.2d Cir.08/23/95), 660 So.2d 137, writ denied, 95-2358 (La.12/15/95), 664 So.2d 454. Contract interpretation is a question of law subject to a de novo review on appeal. Total Minatome Corp. v. Union Texas Products Corp., 33,433 (La.App.2d Cir.08/23/00), 766 So.2d 685; Will-Drill Resources, Inc. v. Huggs, Inc., 32,179 (La.App.2d Cir.08/18/99), 738 So.2d 1196, writ denied, 99-2957 (La.12/17/99), 751 So.2d 885.
Because an insurance policy is a contract, those rules established for the construction of written instruments consequently apply. Gleason, supra. Louisiana C.C. art. 2045 defines interpretation of a contract as “the determination of the common intent of the parties.” Such intent is to be determined in accordance with the plain, ordinary and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable and fair basis. Gleason, supra. An insurance contract should be given no interpretation which will enlarge or restrict its provisions beyond what its terms reasonably contemplated, or which will lead to an absurd conclusion.. Gleason, supra. Absent a conflict with law or public policy, insurers are entitled to limit their liability and impose reasonable conditions upon the obligations assumed in a given policy. Gleason, supra.
However, courts should not strain to find an ambiguity where none exists. Fleming Novelty, Inc. v. Alexander, 34,346 (La.App.2d Cir.12/20/00), 775 So.2d 643, writ denied, 2001-0239 (La.03/23/01), 787 So.2d 1002. Ambiguity in an insurance contract must be resolved according to the general rules governing contract interpretation. Breland v. Schilling, 550 So.2d 609 (La.1989). Unless ambiguous, words used in an insurance contract will be given their common prevailing meaning. La. C.C. art. 2047. Ambiguous policy provisions are to be construed against the party | fiwho furnished its text, that is, in the ease of insurance policies, the insurer. La. C.C. art. 2056.
Reviewing the valuation provision relied upon by John Deere in its insurance policy, the provision does not appear ambiguous as to John Deere’s right to deduct for depreciation. The valuation provision clearly sets forth the means for evaluating “any loss or -damage” to the insured property by allowing John Deere to ascertain or estimate the loss or damage according to the cash value of the property “with proper deduction for depreciation.... ” This,provision does not state that it applies only when a total loss is at stake, but obviously allows a deduction for depreciation to be taken when “any loss or damage” occurs, which indicates that John Deere would only be liable for the actual cash value of the parts needed to repair the skidder minus the deduction for depreciation. There is no ambiguity to this provision, and the application of the valuation provision to the facts does not serve to ■ enlarge or restrict John Deere’s liability on Lonnie’s claim beyond what the policy’s terms reasonably contemplated. Obvious *288 ly, the jury found no ambiguity in the insurance contract. The jury found that John Deere owed nothing more under its insurance policy after being clearly instructed by the trial judge on the law pertaining to any ambiguity in the contract’s terms.
Moreover, considering the intent of the parties, it appears that the provision was not ambiguous. Lonnie admitted at trial that he believed the insurance proceeds were all he was legally entitled to under the John Deere policy. It would be a strain to find ambiguity in the valuation provision, which the law says need not be done, and, therefore, we conclude that the j7John Deere policy was unambiguous as to John Deere’s ability to deduct depreciation from an insured’s claim.
Lonnie also argues on appeal that the jury erred in its determination that the amount of the reduction taken for depreciation, 25 percent, was proper. As stated, the jury determined that John Deere did not owe additional funds to Lonnie under the policy, and, as discussed, the jury correctly determined that the John Deere policy was unambiguous and that John Deere had the right to reduce for depreciation the insurance proceeds payable to Lonnie. Such a determination was a question of law; however, the issue of whether the amount taken for depreciation was proper was a finding of fact, which' may not be set aside on appeal in the absence of manifest error or unless it is clearly wrong. See, Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993).
Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the fact-finder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). An appellate court should not substitute its opinion for the conclusions made by the fact-finder who is in a unique position to see and hear the witnesses as they testify. In re A.J.F., 2000-0948 (La.06/30/00), 764 So.2d 47. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. Leal v. Dubois, 2000-1285 (La.10/13/00), 769 So.2d 1182.
|sOn the issue of the amount deducted for depreciation, the jury considered the testimony of O’Neal who testified that in addition to being an adjuster, he was also an appraiser. O’Neal stated that he had been trained as an appraiser and that he had been in that field since 1983. He testified that he had appraised and adjusted “a few” skidders in the past, so he was not inexperienced with that sort of equipment. He stated that the valuation clause in the John Deere policy was the basis for his taking a reduction for depreciation from the insurance proceeds. Additionally, he had appraised and/or adjusted other claims on behalf of John Deere and had always taken depreciation. Finally, O’Neal stated that whereas he felt that a higher depreciation percentage was warranted, because he disliked taking the reduction at all, he took less than what he thought it should have been.
The jury determined that “a preponderance of the evidence” indicated that John Deere had reduced the insurance proceeds by a proper amount. The jury obviously considered O’Neal a credible witness as to the issue of depreciation and believed that he reasonably calculated the amount of depreciation to be taken. Moreover, Lonnie presented no alternative evidence as to how much depreciation should have been taken. Considering the evidence before it, *289 the jury’s determination regarding the amount of depreciation taken by John Deere was not manifestly erroneous or clearly wrong.
Lonnie also raises two other assignments of error regarding the issues of whether John Deere acted arbitrarily, capriciously and without probable cause in reducing his insurance proceeds, and whether John Deere’s actions had caused Lonnie’s damages. Any discussion of such is pretermitted by |9our decision herein, and we need not address the merits of Lonnie’s arguments as to whether the jury erred or not on those issues.
Conclusion
For the foregoing reasons, the Judgment of the trial court is affirmed at Lonnie Littleton’s cost.
AFFIRMED.
APPLICATION FOR REHEARING
Before NORRIS, C.J., BROWN, WILLIAMS, KOSTELKA, and DREW, JJ.
Rehearing denied.
NORRIS, C.J., BROWN, J., would grant rehearing.

. The Littletons claimed that Colonial Pacific breached the lease/purchase agreement and engaged in unfair trade practices. Roy’s claims were dismissed on a motion for directed verdict. After trial of Lonnie's claims, the jury returned a verdict in his favor against Colonial Pacific and awarded damages in the amount of $107,000.00 for lost profits and mental anguish and $42,500.00 in attorney fees. Lonnie’s damages, however, were offset by a ruling in favor of Colonial Pacific on its demand against Lonnie for sums due under the lease/purchase agreement. After judgment was rendered, Lonnie and Colonial Pacific settled and, therefore, Colonial Pacific is not a party to this appeal.

. On appeal, Lonnie argues that the reduction taken by John Deere was on the theory of "betterment.” The only references to "betterment” in the record were in the Proof of Loss and Subrogation Receipt form and a letter from O'Neal to John Deere regarding his appraisal of the damage. John Deere, on the other hand, states that the reduction was taken for "depreciation,” which was how the deduction was characterized throughout the trial of this matter. Moreover, in his Supplemental and Amending Petition, Lonnie characterized the reduction as a depreciation. Therefore, we will consider the issue of the propriety of taking depreciation by John Deere.