# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #056

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **18th day of December, 2025** are as follows:

**BY Weimer, C.J.:**

2025-C-00169     NGOC TROUNG VS. MARCUS DEWAYNE SANDERS AND OLD AMERICAN INDEMNITY COMPANY (Parish of Caddo)

AFFIRMED IN PART; REVERSED IN PART. SEE OPINION.

Hughes, J., dissents in part and would affirm the court of appeal.

# SUPREME COURT OF LOUISIANA

## No. 2025-C-00169

## NGOC TROUNG

## VS.

## MARCUS DEWAYNE SANDERS AND OLD AMERICAN INDEMNITY, COMPANY

*On Writ of Certiorari to the Court of Appeal,
Second Circuit, Parish of Caddo*

**WEIMER**, Chief Justice.

The threshold issue in this case is whether a tortfeasor has a legal right to deduct for betterment[1] in connection with a tort victim's claim for property damages to a vehicle and, if not, whether the tortfeasor is liable for penalties for asserting such a right. Because the law contemplates full indemnification of a third-party tort victim, the court of appeal's finding that the tortfeasor is not entitled to reduce the tort victim's property damage recovery for betterment in this matter is affirmed. Nonetheless, because this matter does not involve a misrepresentation of pertinent facts and presents a legal issue of first impression, the award of penalties is not warranted and was, therefore, reversed.

---

[1] Betterment is "[a]n improvement that increases the value of real property; esp., an enhancement in the nature of an alteration or addition that goes beyond repair or restoration to a former condition." BLACK'S LAW DICTIONARY, p. 153 (12th ed. 2024).

**FACTS AND PROCEDURAL HISTORY**

On January 21, 2023, Marcus Sanders rear-ended the 2019 Honda CR-V being driven by Ngoc Troung. Mr. Sanders' vehicle was insured by Old American Indemnity Company (Insurer). As a result of the collision, Mr. Troung's vehicle was inoperable due to the damage to the exhaust system, components of the drive assembly, and a tire.[2] On February 6, 2023, the matter was assigned by Insurer to appraiser Chad Rogers for review. He prepared an initial estimate that same day for repairs to the rear bumper and the lift gate totaling $3,008.02, which was promptly paid to Mr. Troung by check dated February 9, 2023. At Mr. Troung's direction, his vehicle was delivered to Roundtree/Mercedes-Benz of Shreveport Collision Center for repair. On February 15, 2023, the repair shop requested supplementation of the initial estimate to include replacement of a tire and repairs to the quarter panel, rear body and floor, and exhaust system. Mr. Rogers, Insurer's appraiser, completed the supplement on February 16, 2023, which brought the estimated repair cost to $6,421.08. The "Supplement of Record 1" reflects a $313.79 adjustment for "[b]etterment applied for prior tread wear (5/32 tread remaining)" ($131.95) and "[b]etterment applied for prior wear on mechanical part"–muffler and pipe ($130.38) and rear muffler ($51.46). In light of the adjustment, the net repair cost was $6,107.29, an increase of $3,099.27, which was paid directly to the repair shop by check dated February 17, 2023. Additional requests were received from the repair shop resulting in three more supplementations of the initial estimate by Mr. Rogers, each reflecting the $313.79 betterment deduction with checks being issued on February 23, 2023, for $301.87, March 3, 2023 for $127.16, and March 14, 2023 for $259.37. In light of the betterment deduction first noted in the February 16, 2023

---

[2] The accident pushed the muffler into the tire, melting the tire's interior wall.

supplement, Insurer's payments for the $7,109.48 damages to Mr. Troung's car totaled $6,795.69. Mr. Troung's vehicle was in the shop for replacement of the muffler, exhaust system pipes, front-wheel-drive components, and a tire through March 16, 2023, or roughly one and a half months. When Mr. Troung went to retrieve his vehicle, the repair shop refused to release it because of the $313.79 unpaid balance attributed to the betterment deduction asserted by Insurer. To enable him to get his vehicle, Mr. Troung's attorney paid the balance.

Despite demands, Insurer refused to provide reimbursement, resulting in Mr. Troung filing suit. In his petition, Mr. Troung alleged that "Louisiana law does not provide for 'betterment' and does not permit a [tortfeasor's] liability insurer to withhold any amounts from the full amount of money required to fix the damages caused to a tort victim's vehicle." Mr. Troung sought penalties based on allegations that Insurer's "refusal to pay the full amount of the required repairs is baseless and thus is also arbitrary and capricious and without probable cause."

On July 6, 2023, Insurer issued a check for $667.83, double the amount of the betterment deduction, to Mr. Troung and his attorney while maintaining the right to a betterment deduction. In their pretrial order, the parties stipulated to all pertinent facts and to the resolution of all issues of liability and damages. The only issues that remained for trial were (1) whether Louisiana law provides for a betterment deduction within the context of a third-party property/tort damage claim, (2) whether Insurer's assertion of a betterment deduction constituted a misrepresentation within the meaning of La. R.S. 22:1973(B)(1), and (3) whether Insurer owed the penalties under La. R.S. 22:1973(C). Pursuant to the agreement of the parties, the matter was submitted to the trial court without live testimony, but with the presentation of

3

evidence (including the deposition testimony of Insurer's appraiser Mr. Rogers and his supervisor, Wesley Staley) and oral arguments.

According to Mr. Rogers, "betterment," which "is the process of applying a deduction to the cost of a component, due to the fact that it is replacing a part or component [part] on a vehicle with a newer, unused part," is a common industry standard for third-party claims. For safety reasons, the tire and component of the exhaust system could not be replaced with comparable used parts. Mr. Rogers explained how he arrived at the deduction amounts for the wear and tear of the two items in question:

> For the tire [Insurer] took betterment of $131.95. That is a 50-percent betterment on the cost of the tire only, including tax, and we arrived at that from the tire tread depth gauge showing 5/32 of an inch tread remaining. Standard tread depth on a passenger vehicle tire is 11/32 when brand-new, so this was approximately half of the tread remaining on the tire, so we applied the 50-percent betterment.

> . . . .

> [F]or the intermediate pipe, which is referred to on here as the muffler and pipe, we took $130.38. That is a betterment of 23 percent. For the rear muffler itself we took $51.46, which again is 23 percent. We arrived at that based on the calculation of the mileage on the vehicle at the time of loss versus a[n] expected life expectancy of 200,000 miles for wearable mechanical components.

Mr. Staley confirmed that betterment deductions for third-party claims are a common practice in the insurance industry.

The trial court found that betterment as that term is used to establish a credit against the amount due by the tortfeasor to the tort victim in connection with third-party automobile property damage claim is allowed, as it is not expressly prohibited by Louisiana law, the jurisprudence, or regulation. Because Insurer's deduction for betterment in the amount of $313.79 was proper, Mr. Troung's bad faith claims under La. R.S. 22:1973 were not considered.

On review, the court of appeal found that under La. C.C. art. 2315(A) "the insured [tortfeasor] is legally bound to repair the damage [he] has caused." **Troung v. Sanders**, 56,015, p. 10 (La.App. 2 Cir. 12/18/24), 402 So.3d 685, 692. Nothing in the law authorizes a tortfeasor or an insurer to adjust a tort victim's repair cost for betterment. "Assessing the party not at-fault with unavoidable costs is not proper, especially considering these allegedly better items were neither desired nor requested by the injured party, and do not increase the value of the vehicle in any meaningful way." *Id.* For these reasons, the appellate court "reversed the trial court's finding that betterment is allowed under Louisiana law for third-party tort actions." *Id.*

The court of appeal further found that under La. R.S. 22:1973 "an insurer has an affirmative duty to adjust claims fairly and promptly." **Troung**, 56,015 at 12, 402 So.3d at 694. The appellate court explained:

> The record shows that the insurer was aware of the full costs of repairs and approved all estimates provided by the repair shop, never indicating to Troung that he would somehow have to participate in assisting Sanders and [Insurer] in repairing the damage caused by Sanders. However, when the repair was complete and it was time for Troung to obtain his vehicle, [Insurer] for the first time asserted its entitlement to a betterment credit. [Insurer's] assertion at that moment that it was entitled to $313.79 in betterment credits rendered Troung incapable of obtaining his own vehicle that had been damaged through no fault of his own. Additionally, [Insurer] refused to tender the amount necessary for the repairs it had authorized.
>
> Troung was not aware of the $313.79 charge until he tried to retrieve his vehicle. By forcing Troung to pay for the betterment credit, a credit [Insurer] calculated itself without any input from Troung, while previously approving all damage repair estimates, amounts to a knowing misrepresentation of pertinent facts.

*Id.*, 56,015 at 12-13, 402 So.3d at 694. The appellate court found that Insurer "act[ed] in bad faith in failing to repair the damage caused by its insured and is therefore liable for the damages sustained as a result of the breach of his duty of good

faith, which include the $313.79 paid on behalf of Troung, as well as the penalty of $5,000, as provided in La. R.S. 22:1892(I)(1)(A)," which now incorporates portions of former La. R.S. 22:1973. *Id.*, 56,015 at 13, 402 So.3d at 694. An application for rehearing by defendants (Mr. Sanders and Insurer) was denied.

Defendants now challenge the court of appeal's finding "that an insurer's deduction for betterment is prohibited in third party tort actions, pursuant to La. C.C. art. 2315" and its award of penalties. Their writ application was granted for this court to determine whether the tortfeasor and his insurer are entitled to assert a betterment deduction against the repair cost of a tort victim's vehicle and whether an award of statutory penalties was proper under the facts of this case. See **Troung v. Sanders**, 25-00169 (La. 4/23/25), 406 So.3d 1157.

## DISCUSSION

### A. Damages--Betterment

The threshold issue is whether the tort victim, Mr. Troung, is entitled to recover the entire cost of his vehicle repairs. Resolution of this issue depends on the tortfeasor's entitlement to a betterment deduction, which contemplates a reduction in the tort victim's recovery based on the proposed advantage received due to the use of a newer, unused parts in repairing the vehicle.

Turning first to the policy of insurance, this court notes that as to Mr. Sanders' "liability to others," Insurer (in Part A of Mr. Troung's insurance policy) contractually agreed to "pay damages, other than **punitive or exemplary damages**, for which a **covered person** is legally liable because of **bodily injury** or **property damage** arising out of an **auto accident** to which this policy applied." Thus, Insurer's contractual responsibility depends on what Mr. Sanders is **legally liable** for

6

because of the damage to Mr. Troung's vehicle.[3] Accordingly, Mr. Sanders' liability is based on the legal obligations that arise under Louisiana law.[4]

Liability insurance policies are issued "for the benefit of all injured persons" and "to give protection and coverage to all insureds." See La. R.S. 22:1269(D) (2010); **Marcus v. Hanover Ins. Co.**, 98-2040 (La. 6/4/99), 740 So.2d 603, 606. The purpose of the compulsory automobile liability insurance law is to provide compensation for persons injured by the operation of insured vehicles. **Marcus**, 740 So.2d at 606.

According to the Louisiana Civil Code, "[e]very act of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2315. Pursuant to Article 2315, a person may recover damages for injuries caused by a wrongful act of another. **Hornsby v. Bayou Jack Logging**, 04-1297, p. 8 (La. 5/6/05), 902 So.2d 361, 367. One injured through the fault of another is entitled to full indemnification for damages caused thereby. **Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Serv. Co.**, 618 So.2d 874, 876 (La. 1993); **Coleman v. Victor**, 326 So.2d 344, 346 (La. 1976). The tortfeasor's obligation is to put the tort victim in the position that he would have occupied if the

---

[3] Pursuant to the Direct Action Statute (prior to its amendment by 2024 La. Acts 275), Insurer is liable *in solido* with its insured–Mr. Sanders. See La. R.S. 22:1269(B)(1) (2010); **Danzy v. United States Fidelity & Guaranty Company**, 380 So.2d 1356, 1360 (La. 1980). Notably, Insurer's liability is subject to the policy's "property damage limit for 'each accident,'" which is not at issue in this case.

[4] The insurance policy in two places limits Insurer's liability where "a repair or replacement results in better than like kind or quality" such that Insurer "will not pay for the amount of the betterment"–(1) in "**PART C, SECTION II: UNINSURED/UNDERINSURED MOTORIST PROPERTY DAMAGE**" and (2) in the section on "**COVERAGES FOR DAMAGE TO YOUR AUTO**"--Part D related to "**OTHER THAN COLLISION COVERAGE**," Part E related to "**COLLISION COVERAGE**," and Part F related to "**TOWING AND LABOR COVERAGE**". The policy, however, does not provide for a similar limitation of liability in "**PART A-COVERAGE FOR YOUR LIABILITY TO OTHERS**," which applies in the instant case. Therefore, the enforceability of a policy provision that provides for a betterment deduction in a third-party context is not currently before this court.

injury complained of had not been inflicted on him.  **Roman Catholic Church**, 618

So.2d at 876; **Coleman**, 326 So.2d at 346 (*quoting* **Lambert v. American Box Co.**,

144 La. 604, 613, 81 So. 95, 98 (1919)).  Consequently, when property is damaged

through the legal fault of another, the primary objective is to restore the property as

nearly as possible to the state it was in immediately preceding the damage.  **Roman**

**Catholic Church**, 618 So.2d at 876 (*quoting* **Coleman**, 326 So.2d at 346).

Accordingly, the measure of damage is the cost of restoring the property to its former

condition.  **Roman Catholic Church**, 618 So.2d at 876 (*quoting* **Coleman**, 326

So.2d at 346-47).  In assessing damage to property, generally, courts have considered

the cost of restoration as the proper measure of damage where the thing damaged can

be adequately repaired.[5]  *Id*.  However, no mechanical rule can be applied with

exactitude in the assessment of property damage under Article 2315.  *Id.*  Each case

---

[5]  In passing, it is noted that this court in **Roman Catholic Church** recognized:

> These basic precepts have been reaffirmed and strengthened indirectly by the Declaration of the Right to Property of our state constitution.  Article I, § 4 of the Louisiana Constitution of 1974, in pertinent part, provides:
>
> > Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property....  Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit....  In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss.
>
> Thus, our constitution does not simply require that the owner of condemned or damaged property be compensated with the market value of the property taken and severance damage to his remainder, but that he be "compensated to the full extent of his loss" and "placed in as good a position pecuniarily as [he] enjoyed prior to the taking."  **State v. Bitterwolf**, 415 So.2d 196, 199 (La.1982), quoting **State v. Constant**, 369 So.2d 699, 702 (La.1979).  Accordingly, justice, reason, and the principle of full reparation of Louisiana Civil Code article 2315 require that where an individual's property is damaged unlawfully by a tortfeasor for no good reason, he be compensated at least as fully as when his property is damaged by the state for a public purpose pursuant to the owner's obligation of citizenship to the community. See La.Civ.Code art. 2626.

*Id*., 618 So.2d at 876, citations omitted.

must rest on its own facts and circumstances as supported by the proof in the record. **Coleman**, 326 So.2d at 347 (*citing* **Jordan v. Travelers Insurance Company**, 257 La. 995, 245 So.2d 151 (1971).

In **Coleman**, the owners of the damaged vehicle sought to recover the market value of the vehicle before the accident less its salvage value, a measure generally used in determining recovery where the tort victim suffers a total loss of their vehicle. Since the owners in **Coleman** had not experienced a total loss, their recovery was limited to the amount necessary to fully repair the vehicle, that is, the cost to place the vehicle in the same condition as it was before the accident. *Id.*, 326 So.2d at 347-48 (*citing* **Goode v. Hantz**, 209 La. 821, 25 So.2d 604 (1946)).

Based on the **Coleman** rationale, the proper measure of Mr. Troung's damage is the amount necessary to fully repair or restore his vehicle so as to return it to as nearly as possible to the state it was in immediately before the accident–$7,109.48. However, defendants seek to have Mr. Troung's recovery reduced by $313.79 for betterment because a new (as opposed to a used, with like wear and tear) tire, muffler and pipe, and rear muffler had to be placed on his vehicle, an issue that was not before this court in **Coleman**. Prior to being rear-ended by Mr. Sanders, Mr. Troung had a fully functioning vehicle that provided him transportation to work and freedom of movement.

Article 2315 recites ineloquently, but simply, the individual at fault is obliged to "repair it." If the vehicle cannot be fixed with used parts, as established here by the testimony of the Insurer's appraiser due to safety reasons, new parts are necessary to "repair it." In the civil law system, it is the statutory language that governs. The liability portion of the insurance contract mandates the insurer is obligated to "repair it" on behalf of the insured. The work the repair shop completed did not go "beyond

repair or restoration"[6] and simply returned the vehicle to service. Before the collision, Mr. Troung had a fully operational vehicle; that is what he is entitled to after the collision.

Although the principle of full reparation is embodied in Article 2315, defendants argue that nothing in Article 2315 prohibits a tortfeasor from requiring a third-party tort victim to pay an amount to get his vehicle repaired. Defendants urge their position on the issue of a betterment finds support in a "long-standing and well accepted industry standard," referencing laws, regulations, rules, and jurisprudence of 18 other states.[7] In 16 of those states, there is legal authority for a deduction for betterment. There is no similar authority in Louisiana for passing a portion of repair cost through a betterment deduction, especially to an innocent third-party tort victim.

While Article 2315 does not expressly prohibit the use of a betterment deduction, it clearly does not authorize the use of such a deduction by a tortfeasor to reduce the tort victim's recovery. Relying on **Reisz v. Kansas City S. R. Co.**, 148 La. 929, 934-35, 88 So. 120, 122 (1921), defendants assert that the absence of expressed authority in Article 2315 should not be interpreted as a prohibition. Notably, this court in **Reisz** found that it was appropriate to apply a depreciation

---

[6] See Footnote 1, *supra* at 1, defining "betterment." Although this case does not pertain to real property, which is referenced in the definition, betterment is also being used by insurance companies in the context of personal property, such as a vehicle.

[7] Betterment deductions are recognized by law, rule, or regulation in 16 states and by jurisprudence in two states. See: **Alabama** Administrative Code 482-1-125-.08(5); **Arkansas** Administrative Code 054.00.43-10(g); **Georgia** Administrative Code 120-2-52-.04(2); **Hawaii** Revised Statutes 431:10C-313(c); **Iowa** Administrative Code 191-15.43(507B)(9); **Kentucky** Administrative Code 806 KAR 12:095(8)(2) & (3)(a); **Massachusetts**, **Molina v. Safety Ins. Co.**, 26 Mass L. Rptr. 595 (Mass. Superior 2010); **Missouri**, 20 Mo. CSR 100-1.050(2)(E); **Nebraska** Administrative Code § 210-60-009.05; **New Jersey** Administrative Code 11:2-17.10(a)(2); **Ohio** Administrative Code 3901-1-54(H)(2); **Oklahoma** Statutes Annotated 36:1250.8(G); **Rhode Island** Administrative Code § 230-RICR- 20-40-2.8(A)(5)(b); **South Carolina**, **Colter v. Omni Ins. Co.**, 2017 WL 64947 *2 (D.C. S.C. 2017); **Tennessee** Rules and Regulations 0780-01-05-.09(5); **Utah** Administrative Code R590-190-11(7); **Virginia** Administrative Code 14VAC5-400-80(E); **West Virginia** Code of State Rules 114-14-7.3(e).

allowance to the tort victim's claim for property damage. See *id.*, 148 La. at 935, 88 So. at 122.[8] According to defendants, the public policy allowing for consideration of depreciation in the measure of property damages applies equally to betterment, which is similarly not prohibited by Article 2315. Notably, **Reisz** involved a tort victim's right to recover for a tortfeasor's damage to a immovable property, a building. The right to a "depreciation deduction" for damage to movable property was addressed in **Littleton v. Colonial Pac. Leasing Corp.**, 35,777 (La.App. 2 Cir. 5/8/02), 818 So.2d 283, but in the context of an insurer's liability for damage to its insured's logging skidder, which was contractually limited to "the cash value of the property 'with proper deduction for depreciation.'" *Id.*, 35,777 at 6, 818 So.2d 287. This court is not convinced that recognition of an allowance/deduction for depreciation in **Reisz**[9] and/or **Littleton** compels a finding that defendants are entitled to a deduction for betterment in this case, especially since appellate courts that have allowed a deduction for depreciation to a third-party claim have done so only where the vehicle's value before and after the damage cannot be reasonably determined or if the cost of repair is more than the value. See **Coleman**, 326 So.2d at 347 n.4. Here, there is no evidence that the cost of repairing Mr. Troung's vehicle exceeded its value.

In further support for their argument that a deduction for betterment is not against public policy, defendants cite **Littleton** and **Eaves v. Norwel, Inc.**, 570 So.2d

---

[8] Although defendants also cite **Coleman** and **State Farm Mut. Auto. Ins. Co. v. Berthelot** as support for a depreciation deduction in a third-party claim, neither case involved the application of a depreciation deduction. Rather, both cases simply recognize the use of a depreciation deduction in the test for measuring damages where "the value before and after the damage cannot be reasonably determined or if the cost of repair is more than the value." **Coleman**, 326 So.2d at 347 n.4 (cost of replacement less depreciation); **Berthelot**, 97-1945, p. 4 (La.App. 4 Cir. 3/25/98), 709 So.2d 1053, 1055 (same), rev'd, 98-1011 (La. 4/13/99), 732 So.2d 1230.

[9] This court renders no position on the propriety of the court's recognition of a deduction for depreciation in the context of a claim for damage to immovable property in **Reisz**.

11

123 (La.App. 3 Cir. 1990). However, in each of these cases, the appellate court was presented with the issue of depreciation/betterment in the context of a first-party (rather than a third-party) claim, and the propriety of Insurer's inclusion of a betterment provision in an insurance policy was not discussed by the court in either case.[10] Nor did the **Littleton** court or **Eaves** court authorize a reduction in the insured's recovery for betterment. Furthermore, the Louisiana Department of Insurance's approval of Insurer's insurance form that includes betterment provisions in connection claims for damage to the vehicle of the tortfeasor, Mr. Sanders,[11] does not dictate what is allowed by the law or public policy.

As previously indicated, the jurisprudence has fleshed out what constitutes the legal liability of a negligent tortfeasor in instances where a vehicle can be adequately repaired. An insurer is not at liberty to limit its liability and impose conditions on its obligations that conflict with the law, here La. C.C. art. 2315 and the Insurance Code, in Title 22 of the Louisiana Revised Statutes or related policy established by the legislature, which is full indemification so as to restore the property as nearly as possible to the state it was in immediately preceding the damage.[12] See **Marcus**, 740 So.2d at 606. It is not the prerogative of the judiciary to ignore the public policy decisions that underlie particular legislation or to reweigh balances of interests and policy considerations previously struck by the legislature. *Id.*, 740 So.2d at 608-09 (*citing* **Progressive Sec. Ins. Co. v. Foster**, 97-2985, p. 21(La. 4/23/98), 711 So.2d

---

[10] In **Eaves**, the court assumed that the insurance policy authorized the insurer to "adjust the loss for depreciation and/or betterment" and found that "the record is void of proof which would have enabled John Deere to invoke these policy provisions." *Id.*, 570 So.2d at 126. Based on the insurer's characterization of the reduction taken, the **Littleton** court refused to address the insured's betterment argument, instead focusing on the propriety of the insurer's reduction for depreciation. *Id.*, 35,777 at 3 n.2, 818 So.2d at 286 n.2.

[11] See footnote 4, *supra* at 7.

[12] This court does not render an opinion on whether an insurer's limitation of liability for damage to its insured's vehicle is against public policy.

675, 688). Obviously, if the legislature wishes to allow a tortfeasor to utilize a betterment deduction in determining liability to a third party for property damage, it can expressly do so. At the present time, however, neither the general principles of tort law, the Insurance Code, nor public policy enacted by the legislature allow the adjustment of recoverable restoration cost for betterment. A contrary finding would not fully compensate the innocent tort victim for the amount necessary to fully repair his vehicle but, instead, arguably place him in a worse position than before the accident, especially under the facts of this case. Accordingly, the court of appeal's decision that defendants are not entitled to an deduction for betterment is affirmed.

Insurer requests that this court's determination that betterment deduction is not allowed should apply prospective only. In **Lovell v. Lovell**, this court set forth the following criteria for determining whether a judicial decision should be accorded prospective effect only:

> (1) the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;

> (2) the merits and demerits must be weighed in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation; and

> (3) the inequity imposed by retroactive application must be weighed.

*Id.*, 378 So.2d 418, 421-22 (La. 1979); see **Willis-Knighton Med. Ctr. v. Caddo Shreveport Sales & Use Tax Comm'n**, 04-0473 (La. 4/1/05), 903 So.2d 1071, 1107-08 (on reh'g) (prospectively application should be given where retroactive application "would undermine th[e] important policy objective [that 'predictability and stability are especially important'] and potentially invite litigation, resulting in needless expense and inconvenience to numerous parties whose consummated transactions might be open to scrutiny under our opinion."). Upon consideration of these factors,

this court declines to find that this decision should apply prospectively only. Article 2315 has been the law of Louisiana since 1808.

### B. Penalties

Insurer contends that the court of appeal erred in finding that Insurer "act[ed] in bad faith in failing to repair the damage caused by its insured and is therefore liable for the damages sustained as a result of the breach of his duty of good faith" and in assessing penalties. According to Insurer, it should not be penalized because it relied on an industry standard and on the Louisiana Department of Insurance's approval of its insurance policy form that included two betterment provisions, especially considering that until now, no Louisiana court had ever addressed whether a deduction for betterment in the context of a third-party claim is prohibited by law.

The statutory basis for awarding penalties was former La. R.S. 22:1973. Section 1973 is penal in nature and must be narrowly and strictly construed. **Kelly v. State Farm Fire & Cas, Co.**, 14-1921, p. 24 (La. 5/5/15), 169 So.3d 328, 343; see **Theriot v. Midland Risk Ins. Co.**, 95-2895, p. 4 (La. 5/20/97), 694 So.2d 184, 186. Penalties cannot be assessed merely because Insurer did not prevail on the betterment claim. See **Headrick v. Pennsylvania Millers Mutual Ins. Co.**, 245 So.2d 324, 326 (La. 1971).

Section 1973(A) provided:[13]

> An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

_____

[13] Former La. R.S. 22:1973(A) is now in La. R.S. 22:1892(I)(1)(a).

An insurer's obligation to third parties under Section 1973(A) was to adjust claims fairly and make a reasonable effort to settle claims. However, third parties did not have a cause of action under Section 1973(A). See **Kelly**, 14-1921 at 11, 169 So.3d at 335. Section 1973 penalties cannot be imposed in a third-party context unless there is a violation of one of the specific provision of Section 1973(B). See *id.*

In pertinent part, Section 1973(B) stated:[14]

> Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

(1) Misrepresenting pertinent facts ... .

Pursuant to La. R.S. 22:1973(B)(1), an insurer can be found liable for misrepresenting or failing to disclose "*pertinent facts.*" **Kelly**, 14-1921 at 25, 169 So.3d at 344. Therefore, Mr. Troung had the burden of proving he had a factual basis for an award of penalties under section 1973(B).

As urged by defendants, whether betterment is ultimately allowed or not under Louisiana law is a legal not factual question. Therefore, Insurer's alleged misrepresentation of the law falls outside of Section 1973(B).

Concerning whether Insurer misrepresented pertinent facts, the court of appeal found:

> [T]he insurer was aware of the full costs of repairs and approved all estimates provided by the repair shop, never indicating to Troung that he would somehow have to participate in assisting Sanders and [Insurer] in repairing the damage caused by Sanders. However, when the repair was complete and it was time for Troung to obtain his vehicle, [Insurer] for the first time asserted its entitlement to a betterment credit.

**Troung**, 56,015 at 12-13, 402 So.3d at 694. According to the appellate court, the Insurer's failure to communicate directly with Mr. Troung about the deduction for

---

[14] Former La. R.S. 22:1973(B)(1) is now in La. R.S. 22:1892(I)(2)(a).

15

betterment, "while previously approving all damage repair estimates, amounts to a knowing misrepresentation of pertinent facts." *Id.*, 56,015 at 13, 402 So.3d at 694.

Neither the post-accident pictures of the vehicle submitted by Mr. Troung to Insurer nor the content in the initial estimate show that Insurer believed or had reason to believe that the needed repairs would involve an adjustment for betterment. Mr. Troung's vehicle was transferred to the repair shop after the issuance of the initial estimate on February 6, 2023. Therefore, Mr. Troung has not shown any bad faith on Insurer's part for failing to convey to Mr. Troung its intent to assert a deduction for betterment prior to the relinquishment of his vehicle to the repair shop and commencement of the repair work.

Additionally, the record shows that Insurer first received information from Mr. Troung's repair shop on February 15, 2023, concerning the need for supplementation of its initial estimate to include the work involving the tire, muffler and pipe, and rear muffler. A supplement was issued by Insurer the following day, which disclosed a total of $313.79 in adjustments for betterment, with payment of $3,099.27 (the increased repair cost less the $313.79 adjustment) being sent to the body shop on February 17, 2023. Accordingly, the record shows that Insurer promptly asserted, weeks before the repairs were completed (on March 16, 2023), an adjustment for betterment in connection with the repair shop's initial request for supplementation of the estimate. In the three additional supplements that followed, Insurer again reflected a $313.79 adjustment to the repair cost for betterment. This evidence negates a finding that Insurer approved payment of the entire estimated repair cost.

Concerning disclosure of Insurer's intent to assert an adjustment for betterment, this court notes that the supplements contained the mailing addresses for Mr. Troung and the repair shop. There is no evidence in the record as to how the

16

Insurer sent the supplements to Mr. Troung and/or the repair shop or as to whether Mr. Troung ever received a copy of them. However, it is undisputed that Insurer timely made in five payments and tendered the full amount of the repair costs, less the $313.79 adjustment for betterment, to Mr. Troung initially and then to the repair shop on Mr. Troung's his behalf. The record is devoid of evidence as to whether the repair shop, which accepted the four supplemental payments on Mr. Troung's behalf, ever communicated with Mr. Troung concerning its requested supplementation, the supplements provided by Insurer, or the payments received from Insurer on his behalf.

Considering the evidence in the record, this court is unable to find that Mr. Troung has proven that Insurer knowingly misrepresented or failed to disclose pertinent facts within the meaning of Section 1973(B)(1) so as to warrant an award of penalties in this matter.[15] See **Kelly**, 14-1921 at 25, 169 So.3d at 344.

Moreover, as recognized by the appellate court, a tortfeasor's entitlement to a deduction for betterment in the third-party context is a matter of first impression in Louisiana. **Troung**, 56,015 at 1, 7, 402 So.3d at 688, 691. Pursuant to **Rudloff v. Louisiana Health Services and Indem. Co.**, bad faith penalties under the Insurance Code ordinarily will not be imposed on a matter of first impression involving an interpretation of the law and an insurer's obligation to pay. See **Rudloff**, 385 So.2d 767, 771 (La. 1980) (on reh'g). There has been no previous judicial determination of a tortfeasor's right to assert a deduction for betterment in a third-party claim. The uncertainty surrounding this issue is evidenced by the contrary findings of the lower courts in this matter. Because Insurer had a reasonable basis for asserting a deduction

---

[15] As indicated, Insurer also issued a check to Mr. Troung for double the amount of the betterment deduction, a demonstration of good faith, while the betterment issue was litigated.

for betterment and acted in good-faith reliance on that defense to payment of a portion of Mr. Troung's repair costs, this court finds that statutory penalties are inappropriate in this case. See **Baack v. McIntosh**, 20-1054, p. 15 (La. 6/30/21), 333 So.3d 1206, 1217.

## CONCLUSION

The Louisiana Civil Code in Article 2315 and the Insurance Code in Title 22 of the Louisiana Revised Statutes embrace a policy that contemplates full indemnification for damages caused by the tortfeasor to a third-party tort victim so as to put the tort victim in the position that he would have occupied if the damage had not been inflicted on him. As Article 2315 of the Civil Code states, the party at fault is obligated to "repair it," and the insurer is contractually obligated to repair the vehicle. Under the facts of this case, by reducing the tort victim's recovery of repair cost for betterment, the tortfeasor deprived the tort victim of his right to full indemnification. Therefore, the court of appeal correctly found that the trial court legally erred in finding that a deduction for betterment is allowed under Louisiana law.

Nonetheless, the award of penalties under former La. R.S. 22:1973 is not warranted in this case because the record does support that a misrepresentation of pertinent facts occurred in this case and this case presents an issue of first impression.

## DECREE

For the foregoing reasons, this court affirms the court of appeal's finding that a deduction for betterment in connection with a third-party tort claim is not allowed under Louisiana law. However, the court of appeal's finding that the insurer's actions warranted an award of penalties in this matter and penalty award are reversed.

**AFFIRMED IN PART; REVERSED IN PART.**